## NESBITT v. FIRST NAT. BANK OF SAN ANGELO et al.

### No. 8468.

Court of Civil Appeals of Texas. Austin.

July 14, 1937.

J. D. Burns and Kerr & Gayer, all of San Angelo, for appellant.

C. T. Dalton and Olin Blanks, both of San Angelo, for appellees.

McCLENDON, Chief Justice.

The bank (First National Bank of San Angelo, Tex.), acting in its dual capacity of independent executor and trustee under the will of Dr. Parsons (S. C. Parsons), deceased, and Mrs. Parsons (Nora H. Parsons), individually, sued Mrs. Nesbitt (Nettie Nesbitt) in trespass to try title to recover residence property in San Angelo. Mrs. Nesbitt, in addition to defensive pleas, filed a cross-action against the bank in both its said capacities and Mrs. Parsons, asserting title in herself under a deed to her from Dr. Parsons, which had been lost. From a judgment upon a directed verdict awarding title and possession of the property to plaintiffs, Mrs. Nesbitt has appealed.

The appeal presents two questions:

1. Whether under R. S. art. 3716, testimony of Mrs. Nesbitt detailing conversations and transactions with Dr. Parsons concerning the execution of the alleged deed was properly excluded as to the bank in its capacity as trustee and as to Mrs. Parsons.

2. Whether the evidence, independently of such excluded testimony, was sufficient to establish execution of the deed.

Dr. Parsons was the agreed common source of title, Mrs. Parsons was his widow, but whether the property was separate or community the record is silent, otherwise than may be deduced from the above agreement regarding common source of title. Dr. Parsons died in 1930. His will was admitted to probate January 29, 1931; and the bank qualified as independent executor on the same day, and seasonably complied with other statutory requirements. The property in suit was listed in the inventory as an asset of the estate. Under the terms of the will, the title to all the testator's property was vested in the bank as trustee, to manage and control, and after payment of all debts and expenses of administration, to pay the income to Mrs. Parsons, during her life, and thereafter to his children, during their lives. After the death of all these beneficiaries, the entire estate was to vest in the Episcopal Bishop of North Texas for certain charitable purposes. No evidence whether the estate had been fully administered, or throwing any light whatever upon such administration, was proffered by either party.

Mrs. Nesbitt's claim, as disclosed by her pleading and proffered but excluded testimony, was in substance: She went into possession of the property in 1926 under an agreement in writing whereby she was to purchase the property for $1,500, to be paid

in monthly installments of $60 without interest. She was also to pay the taxes and make necessary repairs upon the property. She complied fully with her agreement, and some time in 1930, a week or more before Dr. Parsons' death, she went to his office, surrendered her copy of the contract of purchase, and he delivered to her a deed to the property. She thereupon handed the deed back to Dr. Parsons, requesting him to hold it for her, which he agreed to do. Her explanation for this redelivery to Dr. Parsons was that she wanted to conceal her ownership from her then husband, because, from her former experience, she and her children might be deprived of their home by him.

The following holdings are rested upon principles which may now be regarded as elementary:

■ 1. The testimony was inadmissible against the bank in its capacity as independent executor. 14 Tex.Jur. p. 320, § 536.

■ 2. It was admissible against the bank in its capacity as trustee, since its title in that regard was that of a devisee under the will. Newton v. Newton, 77 Tex. 508, 14 S.W. 157.

■ 3. For the same reason it was admissible against Mrs. Parsons in her relation as beneficiary under the trust provisions of the will.

■ 4. If the property were community (of which there is no evidence), the evidence was admissible against Mrs. Parsons as community survivor, since her title, as such, was not deraigned as heir of Dr. Parsons, but existed by virtue of her interest in the community estate. Spencer v. Schell, 107 Tex. 44, 173 S.W. 867, 868.

■ 5. If the property were community, it would be subject to Dr. Parsons' debts, and to administration by his executor. Speer's Marital Rights in Texas, p. 826, § 657.

■ 6. If the estate of Dr. Parsons were fully administered, the executor, as such, would be a mere nominal party, and the evidence would be admissible generally. Stiles v. Hawkins (Tex.Com.App.) 207 S.W. 89.

■ 7. If the estate were not fully administered, the evidence would not be admissible against either plaintiff in whatever capacity, unless the interest or title of the bank as executor was severable from that

of the bank as trustee and that of Mrs. Parsons. Schell Case, supra.

■ ■ Our statutes (articles 3602 and 3681) contemplate the winding up of administrations upon estates of decedents within one year after the grant of letters. See Cox v. Gaines (Tex.Civ.App.) 45 S.W. (2d) 444; Id. (Tex.Civ.App.) 75 S.W.(2d) 172. Ordinarily, therefore, in the absence of some showing to the contrary, it might be presumed, after the lapse of four and one-half years between the date letters were granted (January 29, 1931) and the date suit was filed (August 31, 1935), that the administration had been closed and the bank was holding the property of the estate in its capacity of trustee. Here, however, the executor sued in his capacity as such; there was no verified denial of its right to recover in the capacity in which it sued as required by R. S. art. 2010, subd. 3 [See Gulf, C. & S. F. Ry. Co. v. Houston (Tex. Civ.App.) 45 S.W.(2d) 771]; and Mrs. Nesbitt herself in her cross-action prayed for judgment against the bank in its capacity as executor. Otherwise the record is wholly silent regarding the condition of the estate at any time up to the date of judgment. Under this state of the record, we think clearly it must be taken as established that the estate was still in course of administration by the bank as executor. Caulk v. Anderson, 120 Tex. 253, 37 S.W. (2d) 1008.

Upon the issue of severability of the cause of action of the executor predicated upon his title to or interest in the property, and that of the trustee under the will and that of Mrs. Parsons (whether as beneficiary under the will or as community survivor we think unimportant), the Schell Case, supra, is the leading authority. There Mrs. Schell sued in her dual capacity as community survivor (not, however, as a qualified community administratrix) and as sole heir at law of her deceased husband, upon a promissory note executed by Spencer to Schell. Spencer pleaded payment to Schell, which he offered to prove by his own testimony. This was excluded, and this ruling was affirmed in the following holding: "As a party plaintiff in her [Mrs. Schell's] own right the testimony was admissible against her. As against her in the capacity of the heir of her husband, it was inadmissible under the statute. If the suit were one for the recovery of distinct and severable interests, so that the testimony could be limited and applied to the interest against which it was properly admissible,

as, for illustration, where one sues in his own right and is joined by heirs, each seeking the recovery of a separate interest, the question would not be one of difficulty. The rule announced in Harris v. Warlick (Tex.Civ.App.) 42 S.W. 356; Field v. Field, 39 Tex.Civ.App. 1, 87 S.W. 726; Evans v. Scott (Tex.Civ.App.) 97 S.W. 116, and cases of like character, would then apply. But here the interests upon which the recovery is sought are not severable. They are joined in the same person, and the right to their enforcement constitutes an indivisible cause of action. It would be impossible, for instance, as a practical proposition, to limit the effect of this testimony simply to the interest in these notes of Mrs. Schell as the community survivor. It was not proposed to be shown by the proffered testimony that the payments to which it related were made to Wallace Schell otherwise than upon the notes generally. There could be, accordingly, no warrant for applying them solely to either Mrs. Schell's community interest or her inherited interest. From its nature, the testimony would necessarily affect both interests, and its effect is incapable of limitation."

The holding of nonseverability in the Schell Case has been applied in a number of decisions presenting fact situations more or less analogous to that at bar. These we will briefly consider in the chronological order of their rendition.

Watson v. Watson (Tex.Civ.App.) 229 S.W. 899, was a suit by a widow as community survivor and as next friend for her minor children as heirs of her deceased husband, for specific performance of a contract for the sale of real estate between her husband and the defendant.

Langston v. Robinson (Tex.Civ.App.) 253 S.W. 654, was a suit against a widow as independent executrix of her deceased husband's estate to subject the latter to the payment of a judgment against the husband. The widow sought to establish a resulting trust in the property by reason of use of her separate funds in its purchase.

Connecticutt, etc., Co. v. Banderbee (Tex. Civ.App.) 82 S.W.(2d) 764, was a suit by a widow as community survivor and as sole heir at law of her deceased husband upon a policy of life insurance.

Graves v. Moon (Tex.Civ.App.) 92 S.W. (2d) 290 (error ref.), is practically on all fours upon the issue of severability with the instant case. There the plaintiff sued for a half interest in real estate, devised in its entirety to testator's widow. The plaintiff's title was predicated upon a parol gift from testator. The widow filed a cross-action in her capacity as independent executrix of testator, alleging and proving that the estate was still in course of administration.

Bowers v. Bowers (Tex.Civ.App.) 99 S.W.(2d) 334, was a suit against heirs and devisees to subject community property to an asserted claim against the community estate.

From these decisions the following general formula may be deduced: A suit for title to or interest in specific property subject to administration in a pending estate, or to establish a claim or charge against such estate or against specific property subject to administration therein, constitutes an indivisible, nonseverable cause of action, and the statute applies to the interest or title of all parties holding subject and subordinate to such administration.

We do not construe Garrett v. Garrett, 124 Tex. 330, 78 S.W.(2d) 157, as militating against the above holdings and formula. As construed in Judge Critz's opinion, that suit was to enforce a parol trust against specific property held by a devisee. While the independent executors were made parties defendant, it was pointed out that no judgment was sought fixing any charge against the estate. The specifically devised property passed to the devisee upon the death of the testator. It was not subject to administration until the general estate had been exhausted, and then only in case of deficiency in the general estate. If, as in Graves v. Moon, supra, the executors had sought by proper pleading and proof to bring the property into the administration, we think the statute would apply as well to the devisee as to the executors. But for this distinction we would be unable to reconcile the holding in Garrett v. Garrett with that in Graves v. Moon.

We hold that the testimony of Mrs. Nesbitt was properly excluded as to all plaintiffs.

We hold the evidence sufficient, independently of that excluded, to go to the jury on the issue of the lost deed.

As already stated, Mrs. Nesbitt went into possession of the property in 1926. She retained that possession, without molestation, up to the filing of suit, a period of nearly ten years, four and one-half years of which was after the executors had

qualified. No one demanded of her rent or possession of the property during this four and one-half year period. During that period she was claiming the property under the lost deed, having endeavored to have it located among Dr. Parsons' papers shortly after his death.

Mrs. Emma Eckert testified to having accompanied Mrs. Nesbitt, when the latter went to Dr. Parsons' office. Witness sat in the car in front of the office building for some time, and then went up to Dr. Parsons' office, where she found Dr. Parsons and Mrs. Nesbitt in conversation. As witness entered the office Mrs. Nesbitt had a paper in her hand and said: "Now, I have got my deed." Dr. Parsons then said: "Now this (pointing to the paper) protects you and your children, and you have a home." Mr. Nesbitt then appeared at the door, and Mrs. Nesbitt said to Dr. Parsons: "Here is those papers." She then said: "Take them and keep them in your desk for me until my other business—this other business is straightened out." Witness continued, "and he put them in the drawer." Dr. Parsons then said: "This is my personal property and this protects you and you have a home now for you and your children."

"Q. Did he explain what he meant by personal property? A. Well, they were talking about that he had divided some personal property or something; I don't know what he said, as I didn't pay any particular attention to that."

Mrs. Nesbitt testified, without objection that she paid the taxes on the property; and it was shown by her own and other testimony that she made improvements on the property.

This evidence was clearly sufficient to establish the fact that Mrs. Nesbitt had a deed in her possession in Dr. Parsons' office; that Dr. Parsons stated its effect as securing to Mrs. Nesbitt and her children a home; and that the deed was delivered by Mrs. Nesbitt to Dr. Parsons as custodian for her, and he placed it in the drawer of his desk.

It was also incumbent upon appellant to establish that Dr. Parsons was grantor in the deed, and that the property conveyed was that in suit. Mrs. Eckert's testimony, standing alone, was insufficient to establish these essential elements.

■ It is now an accepted rule of evidence in this state that the execution, delivery, and contents of a lost deed may be proved by circumstantial evidence. Bounds v. Little, 75 Tex. 316, 12 S.W. 1109, 1110; Masterson v. Nav. Dist. (Tex.Com. App.) 15 S.W.(2d) 1011, 67 A.L.R. 1324.

In the former of these cases Judge Gaines quotes with approval the following from Starkie on Evidence: "To the weight and importance of circumstantial evidence to prove the actual execution of a conveyance whose existence cannot be directly proved, there is no limit short of that which necessarily produces actual conviction; and there seems to be no rule of law which excludes such evidence from the consideration of the jury. If there were, it would be a singular and anomolous one which shut out evidence of a nature and description which is admissible in every other case, however important the consequences, even upon trials for murder and treason. Juries are bound to decide according to the actual truth of the facts. * * * It would therefore be absurd and inconsistent to say that a jury was not to be allowed to find according to the real fact, when they are satisfied that an actual conveyance has been executed."

The circumstances pointing to the property in suit as that conveyed in the deed were: Dr. Parsons described the deed as securing to Mrs. Nesbitt and her children a home. They had lived upon this property from 1926, and continued to occupy it as a home for nearly five years after Dr. Parsons' death; Mrs. Nesbitt claiming it against those otherwise entitled to its possession and with their full knowledge of such claim; they making no resistance or demanding rent or possession. She paid the taxes and made improvements on the property, burdens usually assumed by the owner. If the deed conveyed the property in question, it must have been executed by Dr. Parsons, the only person shown to have any title to it.

The trial court's judgment is reversed and the cause remanded.

Reversed and remanded.