ROSALIE MCADOO (PLAINTIFF), RESPONDENT, v. METROPOLITAN LIFE INSURANCE COMPANY, A CORPORATION (DEFENDANT), APPELLANT. —110 S. W. (2d) 845.

St. Louis Court of Appeals. Opinion filed December 7, 1937.

Motion for rehearing overruled December 22, 1937.

Writ of certiorari denied February 25, 1938.

*Fordyce, White, Mayne & Williams* and *Joseph R. Long* for appellant.

*Kopitsky & Kessler* and *Robert L. Aronson* for respondent.

HOSTETTER, P. J.—This is a suit begun by plaintiff on February 16, 1934, in a justice of the peace court in the city of St. Louis, based on an industrial life insurance policy issued by defendant on November 13, 1905, wherein the defendant promised to pay plaintiff the sum of $342.50 upon the death of Robert P. Logan, then her husband. The named beneficiary in the policy was "Rosalee Logan, wife."

Plaintiff prevailed in the justice of the peace court and upon defendant's appeal to the circuit court she again prevailed, recovering the total sum of $645.91, made up of the following items, viz: amount of policy and interest $369.60; attorneys fees $150; amount of premiums and interest, $126.31. Judgment being rendered for

said total sum together with costs and the motion for a new trial being overruled, defendant brings the cause to this court by appeal for review.

When the cause reached the circuit court, the plaintiff filed an amended petition consisting of two counts on which the case was tried, which was, in substance, as follows:

After alleging the issuance of the policy it was averred that on or about March 16, 1916, the insured, Robert P. Logan, disappeared from his usual place of abode and has been absent and unheard of for more than seven years, continuously, from and after said 16th day of March, 1916; that following his disappearance the plaintiff, his wife, made due and diligent search for him, but was unable to locate him or to secure any information as to his whereabouts, and she avers that he is dead. The petition also contains allegations of due notice of the death, defendant's failure to recognize the claim, and its insistence upon further premium payments; also that defendant's refusal to pay was vexatious, willful and without probable cause.

In the second count plaintiff alleged that she had paid all the premiums due upon the policy, after the disappearance of the insured, until the filing of this action on February 16, 1934, and that said premiums were paid by her under the mistaken assumption that the aforementioned Robert P. Logan was, or might be, alive, when, in fact, he was then dead. Altogether, plaintiff prayed judgment for the amount of the policy, with interest, for a ten per cent penalty, for a reasonable attorney's fee, for the recovery of the premiums which she had paid, with interest, and for her costs.

The answer of the defendant to both counts of the petition consisted of general denials and of a plea of the Statute of Limitations, which was alleged to be ten years as to the first count (Section 861, Revised Statutes, Missouri, 1929, Mo. Stat. Ann., sec. 861, p. 1139), and five years as to the second count (Section 862, Revised Statutes, Missouri, 1929, Mo. Stat. Ann., sec. 862, p. 1143.)

The insured and the beneficiary were colored persons. Plaintiff testified that she married the insured in 1902, without going through a formal ceremony, and lived with him in East St. Louis, Illinois, until about 1902 or 1909. (Unquestionably plaintiff and Logan were living together as husband and wife, as many of their race were wont to do, under a common-law form of marriage, then recognized as valid in Missouri. This form of marriage was not outlawed until 1921. [See Laws of Missouri 1921, pp. 468, 469, now section 2977, Revised Statutes, Missouri, 1929 (Mo. Stat. Ann., sec. 2977, p. 5042).] However, the validity of plaintiff's *status* as a wife is not questioned in the record in this case.) The policy of insurance was issued by the defendant to the insured while he and plaintiff were common-law marital mates. Plaintiff made the twenty-five

cents weekly premium payments upon the policy from the date of its issuance until November 7, 1933.

After plaintiff and the insured separated, about 1909, they remained friendly, and the insured continued to visit plaintiff. There was no divorce. Plaintiff testified that after the separation she came to St. Louis and went to her mother's home in Carondelet and that Logan also came to live in St. Louis, but that she didn't know his number. In 1910 plaintiff married James McAdoo and the insured continued to be a friend of plaintiff and her new husband, visited them three or four times a week at their home in St. Louis, and ate meals with them almost every night. There is no contradiction in the record of the fact that Logan resided in St. Louis following the separation and that he continued to do so, up to the time he left for Chicago.

Early in 1916 Logan went to Chicago to work. Plaintiff had received letters from him every month or two. The last letter she received was written from Evanston, Illinois. It was dated March 14, 1916. When Logan departed from St. Louis for Chicago he had supper with plaintiff; she fixed his lunch and he kissed her and her husband goodby and said he would come back and that he wanted to make his home with her and her new husband when he returned to St. Louis. However, she heard nothing from him after the letter of March, 1916.

Early in 1922 plaintiff visited the office of the defendant company at 1410 South Jefferson Avenue, St. Louis. She there spoke to defendant's manager, Mr. Mulrooney. He asked her a number of questions and asked her to try to find the insured. She told Mr. Mulrooney that she had not written to Chicago, but that she had taken every other effort to locate Logan. He advised her to write to the Chief of Police in Chicago. She wrote to the Chief of Police, but received no information. She went back and reported to Mr. Mulrooney that she had written to Chicago and he told her, "Well, you have done your duty."

Plaintiff also inquired through the churches that she knew Mr. Logan was connected with, and "went everywhere," as she said, and sent letters to friends in Chicago. She did all the things that Mr. Mulrooney told her to do to find the insured. She filled out a paper called a "Disappearance Blank" in 1922. Later she was called out to defendant's office by letter, and a small settlement was offered her then, but she refused to accept it, as she felt she was entitled to the full amount. She continued to pay premiums until November, 1933, and defendant continued to accept them.

Every time plaintiff would go out to see the company's agent they would say that they were working on the case. After Mr. Mulrooney retired, which was some time in 1925, plaintiff let the matter rest until finally she employed counsel. She was last at the

office as late at 1927. She had been there one or two times since moving to her present address, which was about in 1927.

Plaintiff further testified, on cross-examination, that she had made no search for Logan since 1922, but that she saw defendant's manager, Mr. Mulrooney, from time to time, including the year of his retirement, when he introduced her to his successor.

The last letter received by plaintiff from the insured, as aforementioned, was introduced in evidence by plaintiff. It was on the letterhead of the Greenwood Inn, Evanston, Illinois. The letter read as follows:

"Benjamin Bayless, Proprietor

"Telephone Evanston 1160.

"Greenwood Inn
"Evanston, Ill.

"March th 14, 113 11 1916

"My Dearest Rosa Lee

"You will Be Some What Surprised when you get this letter to Know that i am in Chicago dearest I Come heare from St. Louis Last Thurs March 9 So I am working at the greenwood Inn hotle these People Sent to St. Louis for me to Come an work for them Sevel tims S i thought i would Come an heare i am what do you think aBout it this is a Mighty fine Place over here i think i Like it Say Rosa Lee Why Dont you an Macfoo Come to Chicago th just Plenty work here write me on this matter an i will See What i will do for you This is all written by your True friend Porfessor R P Logan."

The envelope in which the letter was contained, read as follows:

"The Greenwood Inn                              (2 1-cent
"Evanston, Ill.                                      postage stamps)
            "Evanston, Mar 14, 10 PM, 1916, Ill
                    "Mrs. Rosa Lee Mackdoo
                        "1553 Singleton St.
                            "St. Louis, Mo."

Mr. Kopitsky, plaintiff's counsel, testified as to his services, which evidence bore upon the prayer for a reasonable attorney's fee. Plaintiff also introduced in evidence various letters received by her attorney from the defendant company in 1932 and 1933.

Defendant offered no evidence, but did offer an instruction in the nature of a demurrer to the evidence, which was refused by the court. It then offered an instruction to the effect that if plaintiff should recover under count two for the return of amounts of premiums paid, she could recover only for premiums paid after February 16, 1929, and also offered another instruction telling the jury that if it found that the suit was filed more than ten years after the expiration of seven years following the date of the disappearance of Logan, the insured, then plaintiff's action would be barred by the

Statute of Limitation, also another instruction telling the jury that plaintiff should not recover for vexatious delay or for attorney's fees. All of which were refused. The jury, however, allowed nothing for vexatious delay.

Defendant makes nineteen assignments of error. Many of them overlap each other and quite a number are either wholly or partially repetitious. And many of them are not argued and such as were thus ignored, may be regarded as abandoned, and we will therefore confine our discussion to those which were argued.

The principal assignment of error urged, is that no submissible case was made either under the common-law rule relating to seven years absence, or under the Missouri statutory rule, section 1709, Revised Statutes of Missouri, 1929, which reads as follows:

"If any person, who shall have resided in this State, go from and do not return to this State for seven successive years, he shall be presumed to be dead in any case wherein his death shall come in question, unless proof be made that he was alive within that time."

In Cobble v. Royal Neighbors of America, 291 Mo. 125, 236 S. W. 306, 21 A. L. R. 1346, the Supreme Court of Missouri, en banc, held that the common-law rule as to the presumption of death arising from seven years' absence, was not repealed by our statute on the same subject, and proceeds to state the common-law rule as follows:

"Where a person has not been heard of for seven years by those who, were he living, would naturally hear from him, he will be presumed to be dead, unless the circumstances are such as to account for his silence without assuming his death."

We are of the opinion that the defendant's contention in respect to the demurrer to the evidence is not well founded. We have set out heretofore much of the substance of the testimony adduced and will refer to other facts in the course of the discussion of this assignment. The argument of defendant's counsel against the applicability of the statute is based on the idea that Logan, the insured, was not a resident of Missouri at the time of his actual disappearance. In fact, it is claimed by counsel that there is no evidence that Logan ever was a resident of Missouri, inasmuch as he and the plaintiff prior to their separation were residents of East St. Louis, Illinois. However, we think there is testimony sufficient to support the proposition that after the separation he, as well as the plaintiff, both became residents of St. Louis. In fact, plaintiff testified that following the separation she went back to St. Louis and that Mr. Logan came to live in St. Louis, but that she did not know his street number and her testimony further shows that when he left for Chicago, he had supper with her and her new husband, which was stated to be early in 1916.

Defendant further argues that assuming that he was a resident of Missouri, at one time, but when he was last heard from he

was a resident, of Illinois, and that there would be no sufficient reason to expect him, within the seven years, or at any particular time, to return to the State of which he had ceased to be a resident, and relies largely on the case of Heath v. Salisbury Home Telephone Co., 27 S. W. (2d) 31, and 326 Mo. 875, 33 S. W. (2d) 118. A similar argument was made in Unwin v. John Hancock Life Ins. Co. (Mo. App.), 43 S. W. (2d) 899, and the court there made a lengthy review of the Heath case showing how dissimilar the facts in that case were from the facts in the Hancock case.

When we consider the demurrer to the evidence we must take into consideration the fact that the controverted questions were all decided by the verdict of the jury in favor of the pláintiff and we are also mindful of the fact that in considering a' demurrer to plaintiff's evidence we must regard all matters testified to and brought in evidence, which are favorable to plaintiff's contention, to be true, and, particularly, does this follow in greater force after the jury has passed upon the controverted facts and found the issues in favor of the plaintiff.

We must also find all reasonable inferences deducible from the testimony given, which favors plaintiff's theory of the case, to be correct and true.

Assuming these facts to be true it would necessarily follow that Logan, a resident of Missouri, went out of Missouri to another place, to-wit: Chicago, Illinois. He was last heard from by plaintiff by the receipt of a letter dated March 14, 1916, and then no further showing is made of anybody knowing anything about his whereabouts from that time on to the present.

It is suggested by counsel for defendant that he was at a different place than Chicago, Illinois, where the letter received from him was written. However, it is well known that Evanston is merely a suburb of Chicago, the same as University City is regarded as a suburb of St. Louis. It will be noted that insured in his letter to plaintiff, of March 14, 1916, wrote as if he were in Chicago. Courts may take judicial notice of geographical facts. [Reineman v. Larkin, 222 Mo. 156, 121 S. W. 307; Johnson v. Metropolitan Street Ry. Co., 104 Mo. App. 588, 78 S. W. 275.]

We think the testimony of plaintiff, if believed by the jury, and it evidently was, would justify the inference that she made as much diligent search as to the whereabouts of insured as it was possible for her to make considering her limited facilities and ability to make a search. It will be noted, too, that she advised the defendant in 1922 of the disappearance of her former husband and gave defendant all the aid within her power in trying to locate him, and an officer of defendant company told her that she had done all that was possible for her to do in the way of trying to locate him. In fact, according to the testimony, she acted under the advice and direction

of officers of the company in trying to locate the insured, and it was within the bounds of reasonable inference that defendant itself engaged in the search to locate the whereabouts of the insured. Plaintiff's visits to the office of defendant and her conferences with its officer, the letters which the latter wrote to her on the subject; also the letters which passed between plaintiff's attorney and the defendant in 1932 and 1933 prior to the institution of this suit would justify the inference that defendant was engaged in the search.

It is also significant that it was to defendant's interest to locate the insured, because if located and found to be alive, it would continue to receive the twenty-five cents per week insurance premium instead of having to pay for the loss on the basis of the insured being dead. From January 26, 1922, when plaintiff first called on Mr. Mulrooney and reported the disappearance of the insured, until February 16, 1934, when suit was filed, defendant had every opportunity and we might add, every incentive, to search for the insured. It was possessed of the means and the facilities to make a nation-wide search for him. It offered no testimony, which, of course, is significant. So that, we think the argument that a proper search was not made to establish the presumption of death, is without merit.

We also think that under the facts shown in evidence and the reasonable, legitimate inference deducible therefrom, the jury would be justified in reaching the conclusion that plaintiff of all other persons would be the one most likely to have heard from the insured, had he been alive following the letter of March 14, 1916.

We do not think the Statute of Limitations is available to defendant because, under the facts shown in evidence it has waived it. The correspondence demonstrates this, notably the letter written by defendant's assistant secretary to plaintiff's attorney, dated May 1, 1933, reading as follows:

"Dear Sir:

"Supplementing our letter of February 6, we wish to state that we are desirous of making further inquiries of your client for information in connection with this insured's disappearance. We have had a representative from our district office within your confines call on her, but she refuses to co-operate with him. Will you kindly advise her that it is necessary that a thorough investigation be made to locate the insured and her cooperation is required before we can proceed with the case?

"Please let us hear from you so that we may have a representative again call on your client for the purpose of securing the required information.

"Yours truly,

"Edw. O. Wieters,
"Assistant Secretary."

There is plaintiff's testimony to the effect that .she first called on defendant in 1922 and at intervals thereafter until in 1925, and during all this time she was told that the company was working on the case.

There is no proof in the record that defendant definitely rejected the claim until well within the ten years just prior to the date of filing of the suit. [See Martin v. Modern Woodmen of America, 158 Mo. App. 468, 139 S. W. 231; Bonslett v. New York Life Ins. Co. (Mo. Sup.), 190 S. W. 870; Shearlock v. Mut. Life Ins. Co. of N. Y., 193 Mo. App. 430, 182 S. W. 89.]

Likewise, the five-year Statute of Limitations may not be invoked against the claim for premium refund embraced in the second count. The claim for refund of the premium subsequent. to the death of insured is a single claim in the nature of a running account and the premiums paid more than five years prior to the date of the institution of the suit are not separable from the premiums paid later, and all constitute one indivisible claim. In fact, each weekly payment of twenty-five cents was merely a link in an indivisible chain imposed by the terms of the policy on the insured and the beneficiary.

Defendant claims error in the giving of the following instruction at the request of plaintiff, which is as follows:

"The Court instructs the jury that if you find and believe from the evidence that Robert P. Logan has been absent and unheard of for seven years, or more, next prior to March 16, 1923, then the law would presume that he is dead; and if you further find and believe from the evidence that the defendant was notified of the death of the insured, as aforesaid, and plaintiff furnished the defendant with such proof thereof as the circumstances of the case would permit, if you so find, you will be warranted in so finding and returning your verdict for plaintiff, unless you further find and believe from the evidence that said Robert P. Logan is alive, or has been alive sometime during seven years prior to March 16, 1923, or since that time."

This court in Unwin v. John Hancock Life Ins. Co. (Mo. App.), 43 S. W. (2d) 899, approved an instruction practically given in the same language used in the instruction criticized in the instant case.

Defendant complains of the following instruction given at the instance of plaintiff, viz.:

"The Court instructs the jury that if you find in favor of plaintiff under Count One then you are instructed to find in favor of plaintiff on Count Two. If, however, you find in favor of the defendant under Count One then you are instructed that plaintiff cannot recover under Count Two."

Defendant's argument against the correctness of the first sentence in the instruction is that it ignores the necessity of finding that the

premiums for which recovery was asked, were paid under a mutual mistake of fact, which finding it claims was essential to the right to recovery of the premiums.

We do not agree to this contention. Premiums paid after the death of the insured, which in the instant case, means the presumption of death growing out of the seven years' absence mentioned in the statute, and in the common-law rule, are without any consideration. In Williams v. National Life and Accident Company, 1 S. W. (2d) 1034, loc. cit. 1038, the Kansas City Court of Appeals, speaking through Judge WILLIAM F. FRANK; then a commissioner of that court, but now a member of the Supreme Court of Missouri; in a case similar to the instant one, used this language, viz.:

"If he died in 1918, plaintiff would, under the facts shown, be entitled to the return of all premiums thereafter paid, without any contract or promise to return them."

Defendant's counsel state in furtherance of this contention as follows:

"The law is that a voluntary payment cannot be recovered unless a mutual mistake of fact exists."

However, it might be deemed not altogether a voluntary payment on the part of the beneficiary after the presumption of death arose following the seven years absence, but more in the nature of precautionary payments which were forced on plaintiff by the attitude of defendant in asking further time for investigation and a continuation of the search, which the testimony clearly shows was done in the instant case.

Taking the instructions as a whole, we feel satisfied that the issues were fairly and fully presented to the jury and that no prejudicial error was committed by the trial court against the rights of the defendant, and that the judgment rendered by the circuit court should be affirmed, and, it is so ordered. *Becker* and *McCullen, JJ.*, concur.