## FLOWERS v. KLUMP.
### No. 1847.

Court of Civil Appeals of Texas. Eastland.

Oct. 28, 1938.

Rehearing Denied Dec. 2, 1938.

E. V. Hardwick, of Stamford, and Robertson & Grindstaff, of Haskell, for appellant.

Fred Stockdale, of Aspermont, and Coombes & Andrews, of Stamford, for appellee.

LESLIE, Chief Justice.

Mary Klump, individually and as duly qualified community survivor of the estate of William Klump, deceased, instituted this suit against the defendant W. H. Flowers to recover upon five promissory notes. One of the notes was for $725, and three for $250 each, and one for $320. A plea of limitation was interposed against the $320 note, which was sustained by the court, and no complaint is made against that ruling.

The defendant alleged by special plea that the $725 note, dated January 1, 1936,

was without consideration, and further that it was given in renewal of and in extension of the three $250 notes. A trial was had before the court without a jury and judgment was rendered in favor of the plaintiff on the three notes, aggregating $750, and also upon the $725 note.

From this judgment the defendant appeals. The transcript contains no findings of fact or conclusions of law. There are four assignments of error addressed to the action of the court in the trial of the case and rendition of the judgment. We shall first consider the third assignment which we believe to be decisive of this appeal. It is to the effect that the court erred in sustaining plaintiff's objection and in refusing to admit in evidence a $25 check dated January 15, 1936, and given by the defendant payable to William Klump, or order.

To clearly reflect our holding, a more detailed statement of the case and the testimony will be made. Disregarding the $320 note, the first three notes were each for $250, their principal aggregating $750. The fourth was for $725. It is the defendant's contention that he paid the deceased $25 (evidenced by the check) on the $750 indebtedness and executed the $725 note in suit for the balance. On the trial the court held the $25 check inadmissible, as being in contravention of Art. 3716, R. S.1925, known as the Dead Man's Statute. Disregarding such testimony, if any, the court proceeded to render judgment for plaintiff for the principal and interest called for by the four notes. The defendant insists that had the court held the $25 check admissible and given it its proper probative effect in connection with other circumstances in evidence a different conclusion would have been reached. That, in any event, the exclusion of the $25 check was a prejudicial error, not shown to be harmless, and entitling him to a reversal of the judgment which he complains has the effect of awarding plaintiff a double recovery against him.

■ In the final analysis the defendant Flowers seeks to prove by circumstantial evidence that the $725 note is a renewal of the unpaid portion (after deducting the $25 check) of the three $250 notes, which were not re-delivered to him at the time of such renewal. It is elementary that such a defense may be established by circumstantial evidence, even though questions arise in the case under the statute referred to. Nesbitt v. First Nat. Bank of San Angelo, Tex. Civ.App., 108 S.W.2d 318.

■ The three $250 notes were each dated December 1, 1933 and due, respectively, December 1, 1934, 1935 and 1936. Each bore interest from date at the rate of five per cent per annum until paid. The $725 note is dated January 1, 1936 (eleven months before the due date of the last $250 note). This $725 note fell due January 1, 1937 "with interest from maturity at the rate of 10 per cent per annum until paid."

If true and properly established by the evidence, the $25 check would obviously reduce the $750 principal of the three $250 notes to $725. As a circumstance it is offered on the issue of renewal vel non. In connection with that circumstance, the defendant offered testimony that at the date of the $725 note, subsequent thereto and long prior thereto, he did not deposit any sum amounting to $725 in the bank, that he did not deposit as much as $100 at any such time in the bank; that he did all his business through the bank; that he acquired no property or other thing of value whatever during said period of time from the latter part of 1935 until the middle of 1936; that the only transactions he had were small sales of cotton; that "before January 1, 1936, and after January 1, 1936, or from the latter part of 1935 until the middle of 1936, he had no property or thing of value that he did not have before that time." That he acquired none from anyone; that his cash account during said time remained practically the same, that it amounted to very little.

His bank statements were introduced corroborating his testimony relative to receipts and disbursements.

In connection with the above evidence, the plaintiff, Mrs. Klump and her son, Ben Klump, also testified. Ben Klump was familiar with his deceased father's business, residing near him, examined his father's private papers after his death, and had in charge, under his mother's directions, the affairs of the decedent's estate.

Mrs. Klump was not present to testify, but the agreement entered into by the respective attorneys is to the effect that if she had been present she would testify in substance as follows: "It is understood and agreed that the plaintiff, if present, would testify that William Klump was her husband, that he is deceased, and that she has been unable to find any check that was given to W. H. Flowers on or about January 1, 1936, relative to the $725 note and that she has been unable to find any property

that was transferred to the said W. H. Flowers on or about that time; that she does not know of anything of value that passed from her husband to W. H. Flowers on or about January 1, 1936, the date of the $725 note."

The testimony of Ben Klump is brief, clear and evidently fair. It is in substance and legal effect the same as that of Mrs. Klump.

After his father's death he "took charge or looked through his papers, his bank accounts, and everything." He found no evidence that his father had ever given Flowers a check for $725, or any other like amount during the periods mentioned in the testimony of defendant Flowers and above set out; that he found no memorandum of such in his father's papers and effects; that he found no evidence that his father had transferred any property to Flowers. That his father kept no account books but had his bank statements from the bank with which he did all his business. He testified that if his father had transferred any livestock or anything of value to Flowers during the said time, he would "probably" have known about it. That no such transfer was made; that his father had not owned any livestock for many years. That so far as he knew, his father paid Flowers no cash during that time, or during last year. That if anything was so transferred by his father he did not know of it.

The importance of all this testimony from the standpoint of both Flowers and Klump is that during all the time, material to the inquiry here, nothing occurred with reference to the financial and property status of either of them indicative of any character of independent consideration passing from Klump to Flowers for the $725 note. In other words, the defendant proceeds by a process of elimination to establish, if possible, that the $725 note could have been nothing but a renewal of the balance of the indebtedness evidenced by the three $250 notes.

In connection with the above testimony the bank statements of the deceased were introduced as corroborative of the defendant's contention.

It is further insisted that the testimony in the record generally discloses that Flowers had owed this obligation (the same being evidenced originally by vendor's lien notes amounting to about $1450 or $1500) to the deceased Klump for a considerable time prior thereto and that Flowers had been unable to meet the same although he was being urged by Klump to do so. Under these circumstances it is argued that it is logical to infer that Klump never lent Flowers any additional sum represented by the $725 note. That in that situation an inference would arise that the $725 note evidenced a renewal of the three notes, or unpaid balance thereof, and could not have been based upon any other and different consideration.

Supporting this phase of the contention the record indicates that Flowers, in order to raise money to pay off as far as possible the original obligation to Klump, procured a $700 loan from the Federal Land Bank Commissioner and had same paid to Klump; that for said funds said Klump duly assigned his interest in or lien on certain land to the Land Bank Commissioner. In doing this he was required to scale down the debt Flowers owed him to the extent of about $750 which the evidence tends to show Klump thereafter induced Flowers to attempt to revive and preserve by the execution and delivery to him of the three $250 notes involved in this suit, and which Flowers seeks to show passed into the $725 note by way of renewal of that obligation.

Since no point is attempted to be made in the briefs or by the appeal against the validity of that portion of the original indebtedness alleged to have been scaled down and attempted to be preserved between the parties by the execution of the three notes, we pass over that matter and consider that whole transaction (obtaining the government loan and application therefor) merely to reflect the probable disposition of Klump, under the circumstances, to refuse a further loan to Flowers for which it might be contended the $725 note was given, and also as tending to show, if it does, the inability of Flowers to do more than renew the obligation evidenced by the three notes, and make at such time, if he did, the meager payment of $25 on the principal, reducing same to $725.

We advert to another circumstance reflected by the record. The interest on each of the $250 notes shows to have been paid for 1934 and 1935, and the defendant points out that this shows or suggests that the amount of the three notes ($750) still remained unpaid between Flowers and Klump at the time they negotiated the alleged extension or renewal of the indebtedness. That since December 1st was the due date

of the three notes and since the interest had been paid on each of them for 1934 and 1935, and since two of the notes were past due and unpaid and the third note was approaching its due date, a logical time (about January 1, 1936, eleven months before the due date of the last note) had arrived for a renewal which defendant contends took place.

From another angle the defendant insists that the following circumstances indicate the soundness of his contention that the larger note is but a renewal or extension of the others. It is here pointed out that the $725 note was evidently a form of printed "bank note" providing interest from maturity at the rate of 10 per cent per annum, whereas the original three $250 notes, aggregating $750, provided interest at 5 per cent per annum until paid. That the annual interest at that rate amounted to $37.50; that the payment of this precise amount of interest is evidenced by an indorsement on the $725 note, as follows: "Interest paid $37.50." Obviously this is the amount of the annual interest the defendant had been paying on the three $250 notes. The record does not show the date any interest payment was made but the defendant reasons that "the very fact that one year's interest at 5 per cent on $750 was paid on the $725 note would indicate, to our minds, that sometime before the first of January, 1936, the defendant paid $37.50 to take care of another year's interest, then later the deceased approached him on giving new notes, and no doubt from the history of this indebtedness he was trying to get the defendant to reduce the principal and defendant advised him that $25 was all he could pay on the principal which was done, giving the $725 note in January as a renewal note, along with the $25 check, the note being dated January first."

The defendant makes these contentions, or deductions, in the further light that plaintiff filed this suit April 9, 1937, three months after the due date of the $725 note and upon which there could have been but approximately three months' interest, since that note called for interest from maturity. The circumstances would probably warrant the deduction that the year's interest amounting to $37.50 (based upon the old rate of 5 per cent and the $750 principal of the three notes) was paid somewhat in advance and along with the understanding that the new note should bear 10 per cent interest per annum if not paid at maturity. It is not clear just why the interest amount-

ing to $37.50 should have been indorsed on the new note. The defendant claims it is indicative of the truthfulness of his contentions.

We shall not further extend the opinion by reference to the different links in the chain of circumstances by which the defendant seeks to show that the $725 note is a mere renewal of the other three. We have pointed out the foregoing circumstances and contentions merely to give the $25 check its proper setting in the evidence or group of facts under consideration.

We now come directly to the question of the admissibility of the $25 check and the correctness of the court's ruling in excluding it from consideration upon the objection that it contravened Art. 3716 of the Revised Statutes, 1925. To the extent that the check was offered in connection with the defendant's testimony and showing a transaction by the defendant with the deceased, the trial court ruled correctly, according to the authorities, some of which are relied on by plaintiff, viz., Watson v. Watson, Tex.Civ.App., 229 S.W. 899; Langston v. Robinson, Tex.Civ.App., 253 S. W. 654; Huff v. Huff, Tex.Civ.App., 72 S. W.2d 675; Gee v. Jernigan, Tex.Civ.App., 83 S.W.2d 1102; Graves v. Moon, Tex.Civ. App., 92 S.W.2d 290; Bowers v. Bowers, Tex.Civ.App., 99 S.W.2d 334, and others; but when the defendant's attorney offered the check independently of any such testimony by defendant and merely as an independent circumstance within itself and in connection with other circumstances tending to establish the defendant's contention that the $725 note was a renewal of the other three, the check was not subject to the objection made and the court should have admitted the same, and erred, we think, in not doing so.

It will be observed that on the trial no question was raised as to the authenticity of the $25 check as having been given by Flowers to the deceased, William Klump, and that it was payable to the latter or his order. The check is dated January 15, 1936, and shows to have been paid when presented to the bank January 17, 1936. We think that a check so received by the payee payable to him or his order which is honored by the bank and thus serves its purpose as a negotiable instrument and emerges therefrom with the indorsement, usual, customary and required in such transactions, constitutes material and competent testimony on an issue of renewal and ex-

tension of the original obligation by the execution of the $725 note as contended for in the instant case. As against the particular objection made, the check was admissible as an independent circumstance. As to William Klump, the check thus indorsed and collected became a "writing duly executed by him while living", complete within itself and admissible for whatever it is worth upon the issue joined.

We have found no authority precisely in point, nor with strikingly similar facts, but the spirit and import of the following decisions sustain the conclusions expressed and warrant the reversal of the judgment of the trial court on the assignment of error under consideration. Hagelstein v. Blaschke, Tex.Civ.App., 149 S.W. 718; Horst v. Tobin, Tex.Civ.App., 18 S.W.2d 221; Jones v. Selman, Tex.Civ.App., 109 S.W.2d 1003; and authorities therein cited; Tharpe v. Schmall, Tex.Civ.App., 44 S.W.2d 505; Dodson v. Watson, Tex.Civ. App., 225 S.W. 586; Olschewske v. Priester, Tex.Com.App., 276 S.W. 647; Nesbitt v. First Nat. Bank of San Angelo, supra; Martin v. McAdams, 87 Tex. 225, 27 S.W. 255; Choate v. Huff, Tex.App., 18 S.W. 87.

There are other assignments which either become immaterial under the conclusions announced, or the matters complained of will not occur on another trial since they may easily be obviated by proper amendment of pleadings.

For the reasons assigned, the judgment of the trial court is reversed and the cause remanded.