OPINION. Turner, Jvdge: The shares of common stock in the Schuhmacher Co. included in the gross estates of Henry C. Schuhmacher and Julia Agnes Robson, respectively, as well as the shares that were the subject of gifts by Mrs. Schuhmacher, were reported as having a value of $22 a share on the respective critical dates. By amended petitions and on brief, the petitioners respectively allege that the value of the respective blocks of the stock on the critical dates was not in excess of $18 per share. The respondent contends that the value of the stock included in the estate of Henry C. Schuhmacher was at least $31 per share on September 28,1940, and that the value of the stock included in the estate of Julia Agnes Robson and that involved in the gifts by Mrs. Schuhmacher was at least $32 per share on the respective critical dates, December 23 and December 24,1941. After considering all of the evidence, including opinion testimony, bearing on the question, we have found as facts that on September 28, 1940, the fair market value of the common stock in the Schuhmacher Co. included in the gross estate of Henry C. Schuhmacher was $23 a share, that on December 23,1941, the fair market value of such stock included in the gross estate of Julia Agnes Robson was $24 a share, and that on December 24, 1941, the fair market value of the stock involved in the gifts by Mrs. Schuhmacher was $24 a share. The respondent determined that the gifts of 200 shares of common stock of the Schuhmacher Co. by Mrs. Schuhmacher to each of her 5 minor grandchildren were gifts of future interests and that she was not entitled to 5 exclusions of $4,000 each. Accordingly, he reduced the claimed exclusions of $36,000 by $20,000 to $16,000. At the hearing and on brief respondent also contends that such gifts were made in trust and therefore no exclusions are allowable under section 1003 (b) (2) of the Internal Revenue Code,[2] since the gifts were made after 1928 and before 1943. It is contended by the petitioner-donor that the gifts under the letter of December 23, 1941, were gifts of present interests to her grandchildren and, therefore, she is entitled to five exclusions of $4,000 each. It is true, as argued by the petitioner, that the first two paragraphs of her letter of December 24, 1941, indicate an intention to give outright a present interest in the 4,107 shares to the designated donees, which included the 5 grandchildren. However, the intention of the donor must be ascertained from the letter as a whole. The third and last paragraph of the letter contains specific directions as to the gifts made to the 5 grandchildren. Although in the first paragraph of the letter the sons, John and Harry Schuhmacher, are authorized to cause the 4,107 shares to be transferred to the respective donees thereafter named, which lists of donees includes the names of the 5 grandchildren, it is specifically provided in the last paragraph that the “stock which I have designated as gifts to my grandchildren” shall “be issued in the name of their respective fathers, and held by them, as Guardian, for the benefit of said grandchildren until such time as each of the grandchildren becomes twenty-one years of age.” It was made “specifically a term” of such gifts that the fathers, or their legal representatives, vote the stock so long as it is held by them as guardians.” The last paragraph further provides that dividends received on the stock or reinvestment of proceeds of the sale of same “shall be accumulated or used only for the benefit of the various grandchildren.” The grandchildren were not entitled to the enjoyment or use of the principal until each became 21 years of age. The use of the income therefrom for their benefit was within the discretion of their respectivo fathers. Hence, the grandchildren were not entitled, as a matter of right, to the immediate enjoyment or use of the shares or the income therefrom. Furthermore, that the gifts of the shares were prompted by the desire of the donor that her two sons, John and Harry Schuh-macher, have control over the shares, rather than to make gifts in praesenti to her 5 grandchildren, is disclosed not only by her statement in the first paragraph that it was her desire “to see them [her sons] have substantial interests in the properties to which they are devoting their time and talent,” but by expressly making the gifts to her grandchildren, subject to the right of her sons to vote the stock so long as it was held by them as guardians. In our opinion the gifts of 200 shares to each of her 5 grandchildren were gifts of “future interests in property” within the meaning of section 1003 (b) (2), supra. United States v. Pelzer, 312 U. S. 399; Ryerson v. United States, 312 U. S. 405; Fondren v. Commissioner, 324 U. S. 18; Commissioner v. Disston, 325 U. S. 442; United States v. Knell, 149 Fed. (2d) 331; and Vivian B. Allen, 3 T. C. 1224. The petitioner repeatedly refers to the interests of the five grandchildren as vested. That the interest of a donee is vested is not sufficient ; he must have the right “presently to use, possess or enjoy the property,” which terms “connote the right to substantial present economic benefit.” The question is of time, not when title vests, but when enjoyment begins. Fondren v. Commissioner, supra; Commissioner v. Disston, supra, reversing 144 Fed. (2d) 115. The petitioner relies primarily upon Smith v. Commissioner, 131 Fed. (2d) 254. That case is distinguishable upon the facts. In that case the court pointed out that the trust instrument there involved contained no specific provision for accumulation or postponement and that the dominant and controlling purpose of the settlor in making the gifts as gathered from the whole instrument, namely, the education and preparation of her four grandchildren for a desirable position in life, repelled the idea of either. It is specifically stated in the last paragraph of the letter involved here that “neither said stock nor the proceeds of sale or exchange of same, nor the income therefrom, shall ever inure to the benefit of said fathers, except under the laws of descent or distribution, or by will after said grandchildren individually become twenty-one years of age.” Since the obligation to support and educate the five minor grandchildren rests upon their respective fathers, the use of the stock or income therefrom for such purposes would violate the explicit directions that neither the stock nor the income therefrom “shall ever inure to the benefit of said fathers.” The above statement suggests accumulation and postponement of enjoyment or use of the gifts and repels the idea of the immediate use or enjoyment thereof. In view of our conclusion that the gifts to the five grandchildren were gifts of future interests, it is not necessary for us to consider the contention of respondent that such gifts were made in trust. The action of the respondent in disallowing five exclusions of $4,000 each is accordingly approved. Mrs. Schuhmacher contends that she is entitled to a specific exemption of $2,868.75 in computing her gift tax liability for 1941, which the respondent has disallowed. She claims that she erred in reporting in her 1935 gift tax return gifts in excess of the value of $47,131.25 or more than one-half of the total value of the gifts made by herself and husband in 1935 out of marital community property, and in applying the whole specific exemption of $40,000. She contends that she is therefore now entitled to a specific exemption of $2,868.75, the difference between the statutory specific exemption of $40,000 and one-half of the total value of the 1935 gifts after the deduction of two exclusions of $5,000 each, or $37,131.25. The respondent takes no exception to Mrs. Schuhmacher’s contention that there was properly includible in her 1935 return only her community one-half interest in the total gifts made out of community property by her and her husband in that year. Nor does he contend that her use of a specific exemption of $40,000 in 1935 has in any way enabled her or her husband to obtain the benefit of greater specific exemptions than they were otherwise entitled to. However, he does contend that, since Mrs. Schuhmacher claimed and was allowed the full specific exemption in 1935, it is immaterial whether she reported in that year a greater amount of gifts than she should have, because the year 1935 is not before us and we therefore may not consider and determine the aggregate sum of her net gifts in that year. As was pointed out in Commissioner v. Disston, supra, the statutory plan for taxing the making of gifts requires the determination of the true and correct aggregate of net gifts for previous years in order to compute the gift tax for a given year. While assessment and collection of tax may not be made for a previous year which is barred by limitations, an examination may be made into events of prior years for the purpose of correctly determining gift tax liability for a year that is still open. Where in prior years a taxpayer claimed and was allowed exclusions with respect to gifts which were of such a character that no exclusions were properly allowable, the erroneous allowances are to be disregarded in determining tax liability in a later year. Lillian Seeligson Winterbotham., 46 B. T. A. 972; Leo Wallerstein, 2 T. C. 542, and Dora Roberts, 2 T. C. 679. In Carl J. Schmidlapp, 43 B. T. A. 829, petition for review dismissed, C. C. A., 2d Cir., July 7, 1941, the taxpayer claimed one exclusion and part of his specific exemption in his gift tax return for 1933. In his 1934 return he claimed no exclusion, but claimed a part of his unused specific'exemption. In a proceeding involving his 1935 tax liability it was held that he was entitled to two exclusions in each of the years 1933 and 1934. Since it was shown that the total amount of the gifts reported in the returns for such years, plus others that should have been included, did not exceed the two exclusions to which he was entitled for each of the years, it was held that he came to 1935 with the full amount of his specific exemption intact. In view of the foregoing, we think the respondent’s contention must be denied. We accordingly hold that Mrs. Schuhmacher is entitled to a specific exemption of $2,868.75 for 1941, as claimed. In the estate tax return for the estate of Henry C. Schuhmacher a deduction of $3,000 was taken for miscellaneous administration expenses. The respondent allowed $275 of the deduction and disallowed the balance of $2,725. In the petition for the estate it is alleged that the respondent erred in failing to allow, in addition to the $275, the further amount of $2,560, composed of $2,000 for executors’ fees, payment of $525 for accounting service, and $.35 for attorney’s fee. This was denied by the respondent. However, the parties have stipulated that payments of $2,000 for executors’ fees and $525 for accounting services were made and that the $275 allowed by the respondent in determining the deficiency was one-half of the amount paid for accounting services. In reconciling the contradiction contained in the stipulation that $275 is one-half of $525, the respondent concedes on brief that an attorney’s fee of $25 was also paid for assistance on probate work and that the $275 allowed by him in fact represents one-half of the amounts paid for accounting services and attorney’s fee. The record otherwise containing no evidence on the point, the respondent’s concession as to attorney’s fee is accepted as correctly stating the facts. Having allowed $275 representing one-half of the payments for accounting services and attorney’s fee, the respondent now concedes that one-half of the executors’ fees, or $1,000, is also deductible. The respondent’s concessions narrow down the question to whether the executors’ fees, attorney’s fee, and payments for accounting services are deductible in full, as the executors contend, or only to the extent of one-half, as the respondent contends. Since the evidence fails to show to what extent the property administered by the executors constituted separate property of the decedent, we assume, for the present purposes, that it consisted entirely of community property. Furthermore, in the absence of evidence to the contrary, we assume that the decedent’s surviving widow had not applied for partition of the community property and that no partition had been made. The primary question for determination is whether the administration of the executors was only as to the decedent’s one-half interest in the community property of himself and wife or as to the entire property of the community. The petitioner relies on Blair v. Stewart (C. C. A., 5th Cir., 1931), 49 Fed. (2d) 257; reviewed on other issues, 63 Fed. (2d) 62; certiorari denied, 284 U. S. 658. A question there was whether the funeral expenses of the deceased husband were deductible in computing the estate tax liability of his estate. Upon a review of the Texas statutes and decisions, the court concluded that an executor of a Texas decedent had authority to administer only on the estate of the decedent and therefore could not administer on the community property of the surviving spouse. Accordingly, it was held that the funeral expenses were deductible in full from the decedent’s share of the community property. Thereafter, in 1933, in Lovejoy v. Cockrell (Tex. Com. App.), 63 S. W. (2d) 1009, it was held that under the laws of Texas the community property as an entity is generally regarded as belonging to the estate of a deceased husband, subject to administration by his executor and the payment of his or the community’s debts, the husband being the party during marriage who contracts the debts for the community. Subsequently, in 1937, in Barbour v. Commissioner (C. C. A., 5th Cir.), 89 Fed. (2d) 474, relied on by the respondent, the court was called on to decide whether one-half of the gain from the sale of community property corporate stock sold after the death of the husband but during the period of the administration of his estate was taxable to the surviving wife as her income, or whether the entire amount of the gain was taxable to the independent executors. The court held that the entire amount of the gain was taxable to the executors, citing with approval Lovejoy v. Cockrell, supra. As to that case, the court said: * * * In it the law of Texas is examined, its controlling statutes are cited, and it is npon full deliberation held (1) the community property of a husband and his wife is chargeable with the debts of the husband. (2) The community property, for the purpose of paying his debts, which are chargeable to it, is as an entirety regarded in law as belonging to his estate. (8) While the administration of the estate of the deceased husband is pending in the probate court, the entire community property is subject to the exclusive jurisdiction of that court. * * * The court quoted from the case as follows: * • * The statute, for the purposes of the statute, regards the community property Of the husband and wife, in case there be community debts, as belonging entirely to the estate of the husband, and does not authorize a dismemberment of the estate for administration purposes. In our opinion, by its approval of Lovejoy v. Cockrell, supra, the Circuit Court of Appeals for the Fifth Circuit inferentially overruled Blair v. Stewart, supra. Furthermore, article 3630, Vernon’s Texas Civil Statutes, provides that until partition of community property is applied for by the surviving spouse and made, “the executor or administrator of the deceased shall recover possession of all such common property and hold the same in trust for the benefit of the creditors and others entitled thereto.” In Nesbit v. First National Bank of San Angelo (Tex. Civ. App., 1937), 108 S. W. (2d) 318, it is stated that, that community property is subject to the debts of a deceased husband and to administration by his executor, may be regarded as an elementary principle under the laws of Texas. See also Speer’s Law of Marital Rights in Texas, 3d ed., § 657. This is applicable not only to estates administered under the jurisdiction of the probate courts, but also to estates administered by independent executors. Jenkins v. First National Bank of Coleman (Tex. Civ. App.), 110 S. W. (2d) 845. From the foregoing, we conclude that under the laws of Texas the entire community estate is subject to administration by the executor of a deceased husband. Accordingly, only one-half of the administration expenses here in controversy was attributable to the decedent’s portion of the estate and only one-half may be deducted in computing the estate tax. Lang v. Commissioner, 97 Fed. (2d) 867; Estate of Oscar Levy, 42 B. T. A. 991. With respect to the respondent’s failure to allow to the estate of Henry C. Schuhmacher and to the estate of Julia Agnes Robson credit for inheritance taxes paid to the State of Texas, the parties have stipulated that, upon submission of evidence of payment of such taxes, allowance of credit therefor is to be made to the extent provided for in the applicable statute and regulations. Decisions will be entered under Rule 60. (b) Exclusions from Gifts.— [[Image here]] (2) Gifts after usa and prior to i»4S. — In the case of gifts (other than gifts In trust or of future Interests in property) made to any person by the donor during the calendar year 1939 and subsequent calendar years prior to 1943, the first $4,000 of such gifts to such-person shall not, for the purposes of subsection (a), be included In the total amount of gifts made during such year.