## WAFFORD et al. v. BRANCH.
### (No. 601–4084.)

(Commission of Appeals of Texas, Section A. Dec. 20, 1924.)

**1. Landlord and tenant ⊝⇒34(1)—Question whether parties to written lease intended to abrogate it and substitute verbal agreement therefor, held one of fact.**

In action by landlords against tenant, evidence *held* to make issue whether parties intended to abrogate written lease, and substitute verbal agreement to rent from month to month, one of fact.

**2. Judgment ⊝⇒252(4)—Decree awarding possession to landlords suing for rent, or in alternative to foreclose lien on improvements, held error.**

In suit by landlords to recover rents and forfeit lease and improvements placed premises by tenant, or in alternative to foreclose lien on improvements, it was error to decree possession in plaintiffs and award writ of possession.

**3. Landlord and tenant ⊝⇒157(4)—Decree of forfeiture of buildings which tenant had right to remove held error.**

Where lease gave tenant right to remove at end of term, buildings erected by him on which landlords had lien to secure rent, provided that improvements were not to be removed until rents were paid, and gave landlord right to terminate lease for failure to pay rent and enter into possession, decree forfeiting improvements in suit for rent was error.

⊝⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**4. Landlord and tenant $\Longleftarrow$157(4)—Only rental value without tenant's improvements recoverable after termination of lease.**

Where lease which landlords could terminate for failure to pay rent gave tenant right to erect buildings and remove them at end of term, landlord after termination of lease could recover only reasonable rental value of premises without improvements.

**5. Frauds, statute of $\Longleftarrow$44(4)—Oral contract of lease from month to month not within statute.**

Oral contract to lease premises from month to month is not within the statute.

**6. Frauds, statute of $\Longleftarrow$131(1) — Abrogation of lease valid, but not mere agreement to change rent.**

Where, because of lessee's failure to pay agreed rent, lessors had right to terminate lease for over four years without lessee's consent, oral abrogation of lease by mutual consent and substitution of tenancy from month to month was not contrary to statute, but mere agreement to change amount of rent without abrogating lease would be ineffective.

**7. Trial $\Longleftarrow$350(4)—On presentation of issue of fact as to whether contract of lease had been abrogated, such question should have been presented to jury.**

In action by landlords against tenant for rent where under pleadings and evidence issue of fact was presented whether contract relied on by plaintiffs was abrogated by oral agreement, trial court on request should have submitted to jury issue whether landlord and tenant intended to abandon written lease contract and substitute therefor alleged verbal agreement.

Error to Court of Civil Appeals of Second Supreme Judicial District.

Action by Lily Wafford, administratrix, and others against E. S. Branch. From judgment of the Court of Civil Appeals (254 S. W. 389), reversing judgment for plaintiffs and remanding cause, plaintiffs bring error. Judgment of Court of Civil Appeals affirmed, and cause remanded.

Leaverton & Hardy, of Breckenridge, for plaintiffs in error.

Crate Dalton, of Dallas, for defendant in error.

BISHOP, J. On the trial of this case in the district court the following agreement was made:

"It is agreed that J. B. Stoker and K. Stoker were the owners of the north two hundred (200) feet of block three (3), original town of Breckenridge and entered into a surface lease on the ——— day of March, 1920 (acknowledgments being dated March 10, 1920), with H. C. Burch and V. E. Steen, as shown by copy of said lease attached to plaintiffs' petition as Exhibit A; that said Burch and Steen made a surface lease on July 13, 1920, to E. S. Branch, said lease to Branch covering a strip 25 feet north and south, and 100 feet east and west, and being the north part of said block 3, as shown by Exhibit B. attached to plaintiffs' petition; that after July 13, 1920, H. C. Burch assigned his interest in said lease to S. B. Durham; that on or about the 5th day of August, 1921, Steen and Durham assigned all their interest in and to the Burch lease unto Jack Wofford; that on the 14th day of May, 1921, J. B. Stoker and K. Stoker sold the north two hundred (200) feet of said block three (3) by warranty deed to Lilly Wofford, R. N. Miller, and Oscar B. Kelly, each one taking the following proportions: Lilly Wofford $^{65}/_{170}$, R. N. Miller $^{59}/_{170}$, and Oscar B. Kelly $^{46}/_{170}$, and that Oscar B. Kelly, R. N. Miller, and the estate of Jack Wofford, deceased, now hold in fee the said north two-thirds of block three (3). That Jack Wofford died on or about the 25th of December, 1921, and that on or about the 21st day of June, 1922, Lilly Wofford qualified as administratrix of the estate of Jack Wofford, deceased, and is now administratrix of said estate. That Jack Wofford owned $^{65}/_{170}$ of the said surface lease of E. S. Branch, and held the rest of the surface lease in trust for said Miller and Kelly, Miller owning $^{59}/_{170}$ and Kelly owning $^{46}/_{170}$. That the interest of said Jack Wofford in and to said Branch lease was the community property of Jack Wofford and Lilly Wofford, his wife, and the interest acquired by Lilly Wofford from Stoker and Stoker was the community property of Lilly Wofford and Jack Wofford, now deceased.

"That rent was paid according to this contract by Branch up to August 13, 1921, and then on that date, August 13, 1921, and on September 13, 1921, $75 each month was paid, then for three months following that $50 per month was paid, and that no more has been paid. That demand for payment under the original lease has been made and refused, and plaintiff now makes demand for rental in accordance with the contract up to date. That suit was filed on May 10, 1922, and at that time plaintiff elected to forfeit under the lease contract shown as Exhibit B to plaintiffs' petition, with all improvements situated on the lease."

It was also agreed that all improvements on the lot leased to Branch, which consisted of two buildings, were put there by him under said lease prior to the assignment thereof to Wafford, and that the premises were occupied by him at the time of trial, and had been so occupied since the execution of said lease. The lease from J. B. and K. Stoker to Burch and Steen was for the period of 5 years, permitted subleasing, and provided that all improvements placed on the premises by lessees might at the expiration of the lease be removed by them. There was no express provision in the lease whereby lessees for any cause would forfeit the improvements placed on the premises. The sublease from Steen and Burch to Branch was for the period of 4 years 7 months and 27 days, and contains the following provisions:

"(3) Party of the second part (Branch) agrees to lease, and by these presents does here-

by lease from parties of the first part the above described tract of land for a term of four (4) years, seven (7) months and twenty-seven (27) days from and after the 12th day of July, A. D. 1920, and agrees to pay to parties of the first part for the rental of said premises the sum of six thousand nine hundred eighty seven and $^{50}/_{100}$ ($6,987.50) dollars as follows: one hundred twenty-five and no/$_{100}$ ($125.00) dollars upon the signing of this contract (the receipt of which is hereby acknowledged), and the sum of one hundred twenty-five and no/$_{100}$ ($125.00) dollars on the 13th day of each and every month during the life of this contract, except the last payment, to wit, February 13, 1925, which last payment shall be one hundred twelve and $^{50}/_{100}$ ($112.50) dollars, unless purchased as hereinafter provided, in which event rental shall terminate when purchased. * * *

"(5) It is expressly agreed and understood by and between all parties hereto, that the parties of the first part shall have, and by this contract has, a valid first lien upon any and all the goods, furniture, chattels, building, buildings or property of any description, belonging to the party of the second part, as a security for the payment of all rent due or to become due, and any and all exemption laws in force in this state, by which said property might be held, are hereby expressly waived. * * *

"(7) It is further understood and agreed by and between all parties hereto that party of the second part may build any building or buildings upon the herein leased tract of land, as he may desire, subject to the city, municipal ordinances or other laws in force in this state, or may hereinafter be in force, and at the expiration of this contract, the party of the second part agrees to remove any and all buildings placed on said tract of land immediately and surrender said leased premises to first parties, provided, however, that no building or buildings may be removed therefrom until parties of the first part shall have been paid in full consideration as herein provided. * * *

"(9) It is expressly understood and agreed that should party of the second part fail or refuse to comply with any of the covenants and agreements herein contained, or should there at any time be any default in the payment of any rent, or in any of the covenants herein contained, then it shall be lawful for the parties of the first part to declare this contract canceled and terminated, and to re-enter said premises and remove all persons therefrom without prejudice to any legal remedies which may be used for the collection of rent, all and every claim for damages, for such re-entry being hereby expressly waived, and parties of the first part may, in such event, enter upon said premises, in whole or in part and repossess the said tract of land, together with all improvements placed thereon, as their former estate."

Plaintiffs in error Lily Wafford, as administratrix of the estate of Jack Wafford, deceased, Oscar B. Kelly, and R. N. Miller, in their amended petition on which the case was tried, alleged the execution of the lease from J. B. and K. Stoker to Steen and Burch, and that same was attached to their petition marked Exhibit A and made a part thereof.

No allegation was made as to any provision contained in this lease.

The petition also alleged the execution of the lease from Steen and Burch to Branch on July 13, 1920, "for and in consideration of six thousand nine hundred eighty-seven and 50/100 dollars ($6,987.50), payable one hundred twenty-five dollars ($125.00) per month in advance, and one hundred twelve and 50/100 dollars ($112.50) for the last twenty-seven (27) days," and that a copy of said contract was attached and marked Exhibit B and made a part thereof; that Branch had not paid any rent under said contract or otherwise since November 13, 1921; that the rent due and unpaid from said last-named date to the date of the filing of said petition amounted to $1,500 and "that other rent will probably be due before judgment"; that they had elected "to forfeit said lease and all improvements situated thereon"; and declared "said lease canceled, and a forfeiture of said lease and all improvements situated thereon"; and that there were valuable buildings and other property belonging to Branch on the said premises upon which a lien existed under said lease contract. They prayed for judgment for their rents from December 13, 1921, to October 13, 1922, at $125 per month, and for cancellation and forfeiture of said lease and forfeiture of all improvements and property situated on the said premises, and that if forfeiture of said improvements and property could not be had, that they have judgment foreclosing their lien.

Defendant in error Branch answered by general denial, and by way of special answer alleged "that on or about August 13, 1921, by mutual consent * * * the contract sued upon * * * was fully abrogated and a new verbal contract made in lieu thereof, which said contract was a full agreement between plaintiffs and defendant, and the terms of said contract were that defendant should pay to plaintiffs each and every month from month to month, such sum as the conditions in Breckenridge warranted, the said sum to be a just and reasonable sum for the ground rent for the tract of land described in the plaintiffs' petition"; that "at the time of the making of the said verbal contract, both plaintiffs and defendant agreed that owing to the uncertainty of conditions as they existed in Breckenridge, a lease from month to month was the only lease possible to make at that time fair and just to all parties, and it was at that time agreed that the new lease contract should be from month to month during the agreement of all parties, and that defendant, E. S. Branch, was a tenant of the said premises from month to month"; that at the time of making said new contract it was agreed that $75 per month be paid in advance, which was done; that $75 was agreed to and paid in advance

for the second month under said new agreement; that thereafter $50 was agreed upon and paid in advance for the next 3 months, which paid the ground rent to January 13, 1922; that this new contract was made between Branch and Jack Wafford with the consent of the other plaintiffs in error, and that between December 13, 1921, and January 13, 1922, Jack Wafford died; that on said last-named date he tendered to plaintiffs in error $50 in advance for one month's rent, which they refused; and that they demanded of him $125 per month and also the difference between $125 per month and the sums he had paid in advance for the rent of said premises for the 5 months next prior to January 13, 1922. He, in said answer, and in the trial court on trial, made tender of $450, same being $50 per month for rent of said lot from January 13, 1922, to the date of trial, being practically 9 months, and prayed that plaintiffs in error take only said sum by reason of their suit.

The five payments made on and after August 13, 1921, were made by checks. The check for the first payment recites "for ground rent Aug. 13, 1921, to Sept. 13, 1921"; that for the third payment recites "for rent in full to 11—13—21"; that for the fourth payment recites "for ground rent to December 13—21"; and that for the fifth payment recites "for ground rent until January 13—22."

[1] Defendant in error testified that just prior to August 13, 1921, he had a conversation with Wafford and Miller in which they said they were going to buy the property and asked what he was paying; that he told them he could not afford to pay $125 per month, "and that we would have to have a reduction, and that $75 a month would be plenty for it"; that thereafter on or about August 13, 1921, the written lease was "done away with," and that a new agreement was entered into whereby the lot was rented to him from month to month, and that under this new contract it was agreed between him and Wafford that he pay, and that he did pay, in advance, $75 per month for the first two months, and $50 per month for the next three months thereafter. However, there are statements in his testimony and in the testimony of his wife and mother-in-law from which it could be inferred that it was not the intention to rescind and abandon the written lease and substitute therefor a rental contract from month to month subject to be terminated at the will of either party thereto at the end of any monthly period for which payment had been made in advance, but that the transaction was only a promise by Wafford to accept a less sum than that provided in the lease, if in his judgment conditions so warranted, and that in all other respects the terms of the written lease should remain in effect. We think under the evidence the is-

sue as to whether it was the intention of the parties to abandon, and thereby abrogate the written lease, and substitute therefor a verbal agreement to rent the lot from month to month only, the rent to be paid in advance, and the rental agreement terminable at the will of either party at the close of any monthly period for which rent had been paid, was one of fact.

The case was tried before a jury and submitted on special issues. The defendant in error Branch requested the court to submit the following issue, which was refused:

"Was it the intention of Jack Wafford and defendant, E. S. Branch, to disregard and abandon the written lease contract and substitute therefor a verbal agreement that E. S. Branch should rent the ground, described in plaintiff's petition, from month to month at such price as conditions in Breckenridge warranted whether said price was more or less than the original lease called for? Answer yes or no."

The issues submitted by the court and the answers of the jury thereto are as follows:

"(1) What was the reasonable ground rent on the property in question from January 13, 1922, up to the present time? Answer: $40 per month.

"(2) What was the reasonable rent of the ground and improvements from May 10, 1922, up to the present time? Answer: $80 per month.

"(3) Did Jack Wafford have authority to act for the plaintiffs Miller and Kelly in all transactions entered into by and between himself and defendant, E. S. Branch? Answer yes or no. Answer: Yes."

On this verdict judgment was rendered in favor of plaintiffs in error for the sum of $1,004.50, with 6 per cent. interest from date thereof; that the lease be canceled and forfeited; that the improvements placed on said lot by defendant in error be forfeited to plaintiffs in error, "and full and complete title and the right of possession to said improvements * * * decreed in and to" plaintiffs in error; and that the right of possession of said premises be decreed in plaintiffs in error, and writ of possession awarded.

[2] This is an action by plaintiffs in error to recover rents alleged to be due under the written lease, and for rents due, after plaintiffs in error had by election under the provisions of said lease terminated the same, to the date of trial, and to forfeit to plaintiffs in error the improvements situated on the rented premises and belonging to defendant in error, or, in the alternative, to foreclose a lien on said improvements to secure the payment of said rents. It is in no sense an action in the nature of forcible detainer. Nor is it a suit for title or possession of real estate. The trial court erred in decreeing possession in plaintiffs in error and awarding writ of possession. Such relief was nei-

ther warranted nor contemplated under the pleadings.

[3] We also think the court erred in decreeing a forfeiture of the improvements to plaintiffs in error. The lease contract by its terms gave the lessee Branch permission to erect the buildings on the lot, with the agreement that at the expiration of the lease he immediately remove them. It also gave an express lien on the improvements to secure the rents, and it was agreed that at the expiration of the lease contract the improvements were not to be removed until the rents were paid. It is true that the contract provided that should there be any default in the payment of rent, the lessor would have the right to declare the lease contract terminated, and in that event might "enter upon said premises, in whole or in part, and repossess the said tract of land, together with all improvements placed thereon, as their former estate." This gave the plaintiffs in error the right to take possession of the buildings, but it was not intended that by taking possession, title to the buildings should pass from lessee to lessors. This language does not warrant such construction. If, instead of filing suit to recover rents, plaintiffs in error had entered upon the premises and taken possession of the buildings, and defendant in error, within a reasonable time thereafter, had made tender of payment of all rents due, he would have been entitled to remove the buildings. Then of course plaintiffs in error could not exercise their right to cancel and terminate the lease contract, file suit and recover all rents due, and also have the court decree a forfeiture to them of the property of defendant in error. This lease contract does not provide for such forfeiture.

[4] It follows therefore that the trial court erred in rendering judgment for the plaintiffs in error for the sum of $1,004.50. This judgment was evidently rendered on the holding that plaintiffs in error were entitled to recover $125 per month under the lease contract from January 13, 1922, until said lease was declared terminated on May 10, 1922, and $80 per month as found by the jury to be the reasonable rental value of the lot and improvements from May 10, 1922, to the date of trial. The improvements belonged to defendant in error, and he could not be required to pay rent on his own property. Under the evidence, the court should not have submitted the issue requiring the jury to find the reasonable rental value of the lot with the improvements, but should have required a finding of the reasonable rental value of the lot without the improvements from May 10, 1922, to date of trial, in order to have arrived at the proper amount of recovery in the event plaintiffs in error were entitled to recover under the terms of the rental contract relied on by them.

The Court of Civil Appeals reversed the judgment of the trial court, and remanded the cause on a holding that the verdict of the jury on the issues submitted was favorable to defendant in error on his special answer, and for this reason it was error for the court to render judgment for plaintiffs in error on the contract pleaded by them, and that therefore the judgment rendered was non obstante veredicto, and not allowed under article 1990, Revised Civil Statutes. 254 S. W. 389.

The allegation in the special answer is that a verbal contract was entered into under the terms of which Branch rented the premises from month to month, and that the written contract sued on was by mutual consent abrogated. The issue as to whether Wafford was authorized by his associates, Miller and Kelly, to enter into this agreement would not be a material issue if this answer presented no defense to the cause of action. We quote from 24 Cyc., under the title of "Landlord and Tenant," p. 912:

"An oral agreement, not forbidden by the statute of frauds, and based on a sufficient consideration, is valid to modify the terms of an existing written lease. Where the acts of the parties amount to an abandonment of the original contract, and a waiver of its terms, either party thereto may enforce his rights under the agreement as modified. The surrender or abandonment of a written lease, and the substitution therefor of a modified agreement may be by parol, and need not be proven by express and direct evidence, but may be inferred from the acts and conduct of the parties. A proposed modification of the lease, acted upon by one party and distinctly acquiesced in by the other, is sufficient to establish such modification."

[5, 6] This was a contract not within the Statute of Frauds, because it was a lease for less than a year. The issue tendered by this answer is that a verbal contract was made between the parties, the legal effect of which was to terminate the written contract sued on. If this contract was a new and distinct agreement independent of and repugnant to the written lease, and, if Wafford, acting for himself and his associates, intended to terminate the formal lease, we see no reason why this transaction did not have this effect. The written lease provided that if default should be made in the monthly advance payments, the lessors should have the right to terminate the lease. When Branch advised plaintiffs in error that he could not pay the $125 per month rental, they could have abandoned the written lease and entered into a new and distinct contract. If, on a failure of the lessee to comply with any of its terms, the written lease, at the election of the lessors, could be terminated, it could certainly be abandoned by the lessors when they realized that the lessee could not, or should not, be required to comply with such terms. For 5 months

plaintiffs accepted in full payment of the monthly rental a less sum than that provided in the lease. The failure to pay the $125 per month gave the lessors the right to terminate with or without the consent of Branch. The allegation that it was abrogated by mutual consent would not render the abrogation void as being contrary to the statute of frauds, because lessee's consent is not shown to be in writing. If, however, under the facts it should be determined that the written lease was not abrogated as alleged, but that there was merely an agreement to change the amount of the monthly payments under said lease, the special answer would afford no defense to the cause of action alleged.

In Elliott on Contracts, vol. 3, p. 10, it is said:

"A contract may also be discharged or modified by a new contract inconsistent with the earlier contract so that they cannot subsist together, even though there is no express agreement that the new contract shall have that effect. As a general rule, where the new contract is in regard to the same matter and has the same scope as the earlier contract and the terms of the two contracts are inconsistent either in whole or in a substantial part, so that they cannot subsist together, the new contract abrogates the earlier one in toto and takes its place. But much depends upon the nature and extent of the inconsistency and the scope and proper construction of the particular contract, and the new contract may supersede or modify the old only in part. It may not be as broad in its scope as the old and may cover or relate to only a particular provision or part of the subject-matter. In such case it would not, ordinarily at least, abrogate and supersede the old contract in toto, but only in regard to the particular provision or subject to which it refers and as to which the inconsistency exists."

[7] We have concluded that under the pleadings and evidence there is here presented an issue of fact as to whether the contract relied on by plaintiffs in error was abrogated in toto by an oral agreement as alleged by defendant in error, and that the trial court on request should have submitted to the jury the issue as to whether it was the intention of Jack Wafford and Branch to abandon the written lease contract and substitute therefor the alleged verbal agreement. Had the jury found that there was no such intention, then of course the issues as to whether Wafford was authorized to make the verbal agreement, and the reasonable value of the rent from January 13, 1922, would be immaterial. However, the trial court was not authorized to make this finding and thereby render immaterial these issues.

We recommend that the judgment of the Court of Civil Appeals be affirmed, and the cause remanded to the district court.

CURETON, C. J. Judgment of the Court of Civil Appeals affirmed, and cause remanded to the district court for further proceedings in accordance with the opinion of the Commission of Appeals.