T. O. PUGH V. MARY VIRGINIA SCOTT TURNER ET AL.

No. A-991. Decided November 27, 1946.
(197 S. W., 2d Series, 822.)

*R. T. Correll,* of Perryton, *Hoover, Hoover & Cussen,* of Canadian, and *Sanders, Scott, Saunders & Smith,* of Amarillo, for petitioner.

The Court of Civil Appeals erred in holding that there was no consideration for the accord and satisfactory agreement. Losecco v. Gregory, 108 La. 648, 650, 32 So. 985; Jambers v. Wood, 85 S. W. (2d) 353; Overton v. Connor, 50 Texas 113; Terrell v. Davis, 90 S. W. (2d) 872; Lilly v. Verser, 133 Ark. 547, 203 S. W. 31.

*Boyer, McConnell & Hankins,* of Perryton, for respondent.

On the proposition that the compromise agreement carried no consideration and therefore was not in accord and satisfaction of the debt and did not constitute a release of the notes sued upon, respondent cites Hines v. Massachusetts Mut. Life Ins. Co., 174 S. W. (2d) 94; McCarty v. Humphrey, 261 S. W. 1015; Texas Mut. Life Ins. Assn. v. Young, 150 S. W. (2d) 473; First Texas Prudential Life Ins. Co. v. Connor, 209 S. W. 417.

MR. JUSTICE SHARP delivered the opinion of the Court.

Mary Virginia Scott Turner instituted this suit, individually and as independent executrix of the will of her then husband, J. H. Scott, to recover on two negotiable promissory notes, aggregating $8,832.00, plus interest and other charges. Such notes were executed by petitioner, T. O. Pugh, to J. H. Scott, and at the time of their execution they were secured by a mortgage on Pugh's farm machinery and wheat crop. Pugh defended the suit, on the contention that, at Scott's suggestion, it was agreed between them that if Pugh would sell his machinery and bring the proceeds to Scott, together with whatever Pugh might make from his wheat crop, Scott would accept such sum in satisfaction of the debt. The machinery was sold for $700.00; but the wheat crop was a total failure. Nevertheless, when Pugh brought the $700.00 to Scott, Scott accepted it; and although he did not return the notes, he executed a release to Pugh of the mortgage on the machinery and the wheat. The release recited payment of the debt in full. Scott died afterwards, and his surviving wife brought this suit to collect the balance due on the notes, allowing a $700.00 credit. Before the trial Mrs. Scott married Turner, who was joined as a party plaintiff. On a former trial the district court entered a judgment denying recovery on the notes, based on a jury's finding in Pugh's favor. The Court of Civil Appeals reversed and remanded the cause, holding that, although Article 3716 of the Revised Civil Statutes was not applicable, the compromise agreement lacked consideration, and that there was further error in the submission of special issues to the jury. 187 S. W. (2d) 598. No writ of error was applied

for. On retrial, Pugh again obtained a jury verdict; and again the trial court denied recovery on the notes, and decreed that Mrs. Turner take nothing. On this appeal the Court of Civil Appeals reversed and rendered the cause, instructing the trial court to enter an appropriate judgment for Mrs. Turner on the notes, on the theory that, as a matter of law, the compromise agreement was not supported by consideration. 195 S. W. (2d) 374. Upon that point this Court granted a writ of error.

Two points are necessary for a decision in this case: (1) Whether the evidence of the compromise agreement between Pugh and Scott, now deceased, was admissible under Article 3716, Revised Civil Statutes; and, if so, (2) whether such agreement is supported by a sufficient consideration.

The debt in question arose in 1930, and was renewed from time to time. The notes sued upon were secured by a mortgage on Pugh's farm machinery, including a combine, two trucks, two tractors, two listers, and other machinery, and on Pugh's two-thirds interest in wheat to be produced on 400 acres of Section 1004, the west one-half of Section 1003, containing 320 acres, and the north one-half of Section 933, containing 320 acres, totaling 1040 acres, in Ochiltree County. The parties contemplated the withholding of some acreage under the government's wheat allotment reduction program. The exact amount of acreage in growing wheat at the time of the alleged compromise agreement is not in evidence, but Pugh estimated on the trial that "Scott's part" was about 600 acres; that the harvest should have yielded about 25 bushels to the acre; and that it looked good in April of 1941. There was no evidence of the market value of the wheat.

In April, 1941, after maturity of the notes, which were due on July 27, 1939, and July 27, 1940, respectively, Pugh and his wife went to Scott's residence in Dallas to borrow more money from Scott. At such meeting Scott's wife, now Mrs. Turner, was present. Scott declined to extend further credit to Pugh. Pugh testified, over objection, that such testimony was in violation of Article 3716, Revised Civil Statutes; that Scott stated that he wanted to clean up his business, that is, collect on the notes. Upon Pugh's declaration that he was unable to pay, Scott said, "I can fix it so you can. * * * You go back home and sell that machinery, and bring me the money, and give me what the crop makes, and I will call it square with you." Pugh accepted the proposal. Mrs. Pugh, who was also present, gave testimony,

over objection, that corroborated the facts recited by her husband. Mrs. Turner testified that such meeting occurred, but denied that the above agreement was made.

Thereafter Pugh and wife returned to Ochiltree County. Handbills were printed stating that the machinery would be sold at public auction. The advertisements were scattered in Booker and Beaver City and other places. An auctioneer and clerk were hired, and all the machinery was sold for $700.00. The wheat crop was a complete failure.

On June 25, 1941, Pugh and wife made another trip to Dallas to see Scott. Again a conference was held at Scott's residence, at which Pugh and his wife and Scott and his wife were present. Over objection, Pugh testified that Scott accepted a check for $700.00 in full settlement of the debt; that he explained to Scott's satisfaction that the money represented all that was received from the sale of the machinery, and that the wheat was not worth harvesting; that Scott's wife was unable to locate the notes or a mortgage release form, and it was agreed that the notes would later be mailed to Pugh. A release obtained at a near-by garage was corrected to meet the situation by Mrs. Turner. It read:

"* * * on this day personally appeared J. H. Scott * * * as the holder(s) of a lien * * * in the amount of Approx. $9200.00, and who is (are) the holder(s) of said lien against the following described All Farm Machinery and All Wheat Grown By Me in 1941. This is held against T. O. Pugh.

"And that said lien is hereby released, full payment to satisfy said lien having been received by the above mentioned party (parties), and that said lien may be removed from Records."

Mrs. Turner testified that the meeting occurred on June 25, 1941, but that the $700.00 was not accepted to discharge the debt; that the mortgage only was released so that Pugh could obtain credit elsewhere. The notes were not mailed to Pugh, but no demand for further payment was made until June, 1943, several months after Scott's death. One of the notes shows a notation of a $700.00 payment. The notation was made by Mrs. Turner at some later date.

The jury found: (1) That Scott agreed to accept in full satisfaction of the debt whatever proceeds were received from the sale of the farm machinery and the wheat crop; (2) that Scott accepted the $700.00 on June 25, 1941, in full payment of the

two notes sued upon; (3) that in April, 1941, Pugh was insolvent, and that Scott knew of such insolvency; (4) that Scott accepted the above proceeds in consideration of Pugh's insolvency; (5) that upon delivery of the $700.00, Scott intentionally cancelled the balance due on the notes; and (6) that Scott did not accept the $700.00 in consideration only for the release of the mortgage.

Further facts which are necessary in the consideration of the applicability of Article 3716 are as follows: Scott died January 6, 1943, and his will was admitted to probate soon thereafter. Under the will Scott bequeathed a sum of money to each of two persons other than his wife, left all the rest of the estate to his wife, and appointed her independent executrix without bond. She qualified as executrix on January 26, 1943, and took over management of the estate. In June, 1943, she made demand for payment of the notes in suit, and this suit was filed thereon in July, 1943. In such suit she sought recovery both in her capacity as independent executrix and in her individual rights. At the time suit was filed, debts of the estate had not been paid, and the legatees had not been given their bequests. The legacies to the two beneficiaries were paid in full in August, 1943. An inventory and list of claims was filed by the executor in November, 1943, which listed one note executed by Pugh; which note was treated by the parties as the debt in question. Under the listing of the above note was the comment that such claim was disputed and that suit had been filed to determine the validity thereof. The Federal estate tax was paid in April, 1944. This suit was first tried in November of 1944. On such trial Mrs. Turner testified that at *that* time, i. e., in November, 1944, all of the debts of the estate had been paid and all of the bequests to others than herself had been satisfied in full. On the second trial of the case she was not present. By agreement of counsel her testimony at the second trial was given by reading her testimony from the record of the first trial. Although Mrs. Turner testified that she was still acting as executrix of the estate at the trial in November, 1944, the only unfinished business of the estate grew out of the collection of the notes sued upon.

In his second amended answer, filed November 21, 1945, apparently to meet the requirement of Article 2010, Section 3, Pugh denied under oath that Mrs. Scott was entitled to recover in the capacity in which she sued, i. e., as independent executrix, because the estate had been ·fully and completely administered.

The judgment, founded on the jury's verdict, was that Mrs. Scott, individually and as executrix, take nothing, and that Pugh recover from her, individually and in her representative capacity, all costs of the suit.

■ That portion of Article 3716 sought to be applied in this suit reads as follows:

"In actions by or against executors * * * in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the others as to any transaction with, or statement by the testator * * * unless called to testify thereto by the opposite party; and the provisions of this article shall extend to and include all actions by or against the heirs or legal representatives of a decedent arising out of any transaction with such decedent."

This statute is to be strictly construed (Hutto v. Cook, 139 Texas 571, 164 S. W. (2d) 513, and cases cited), and it is not applicable to here nominal parties. Ragsdale v. Ragsdale, 142 Texas 476, 179 S. W. (2d) 291; Logan v. Logan (Civ. App.), 112 S. W. (2d) 515; Matthews v. McLen (Civ. App.), 131 S. W. (2d) 24. Nor does the statute extend to legatees or devisees, since they are not included in the words "heirs or legal representatives" as used in the statute. Newton v. Newton, 77 Texas 508, 14 S. W. 157; Mitchell v. Mitchell, 80 Texas 101, 15 S. W. 705; Garrett v. Garrett, 124 Texas 330, 78 S. W. (2d) 157; Houston Transfer & Carriage Co. v. Williams (Com. App.), 221 S. W. 1081.

It has been held that where recovery was sought by a wife in her own right as community survivor, and also as an heir of her husband, and the suit was brought in such dual capacity, although the testimony might have been admissible against the wife in a suit brought in her own right, yet, the interests not being severable, the fact that she was suing as an heir rendered the testimony inadmissible under Article 3716. Spencer v. Schell, 107 Texas 44, 173 S. W. 867; Fuston v. Wilson, 144 Texas 588, 192 S. W. (2d) 444; McKibban v. Scott, 131 Texas 182, 114 S. W. (2d) 213, 115 A. L. R. 1421.

■ The existence of the disqualifying interest must be determined as of the time the testimony sought to be excluded is offered, and not as of the time of the filing of the petition. Markham v. Carothers, 47 Texas 21; Oury v. Saunders, 77 Texas 278, 13 S. W. 1030; Albritton v. Commerce Farm Credit Co., 9 S.

W. (2d) 193, affirmed 17 S. W. (2d) 784; 28 R. C. L. 503; 70 C. J. 231; 14 Tex. Jur. 324; McCormick & Ray, Texas Law of Evidence, p. 230, sec. 152.

Under the above rules, if, as contended by Pugh, Mrs. Turner was in fact the owner of the two notes in her own right, not as an heir, but as a legatee under Scott's will, and was not holding them as executrix of Scott's estate, then the statute is not applicable, because at the time of the trial she, as executrix, was a mere nominal party in that capacity. If the estate has been fully administered, the executrix, as such, would be a mere nominal party, and no judgment could be rendered which would affect her in such capacity. Stiles v. Hawkins (Com. App.), 207 S. W. 89; Frame v. Whitaker, 120 Texas 53, 36 S. W. (2d) 149; Kidd v. Young, 185 S. W. (2d) 173 (reversed on other grounds, 144 Texas 322, 190 S. W. (2d) 65); Nesbitt v. First National Bank of San Angelo (Civ. App.), 108 S. W. (2d) 318; Caffey's Ex'rs v. Caffey (Civ. App.), 35 S. W. 738.

■ The Court of Civil Appeals on the former trial of this case, 187 S. W. (2d) 598, correctly decided that at the time of trial the estate was fully administered. All debts were paid, and all gifts under the will were delivered. Mrs. Scott, the residuary legatee, was in possession of the notes and the balance of the estate. Article 3314, Revised Civil Statutes, provides that where property is left by will, the estate shall vest immediately in the devisee or legatee, subject to administration for the payment of debts. Articles 3509, 3602, and 3681 contemplate the termination of estates within one year. More than a year had elapsed from the time of the qualification of the executrix to the time of trial. If Mrs. Scott desired to show that she was a necessary party in her representative capacity, especially where the opposite party had filed a sworn denial that the estate was fully administered, it was incumbent upon her to allege and prove that the estate owed debts or that claims of others existed against the estate. In the absence of such allegation and proof, no judgment could have been rendered in her favor or against her as executrix of the estate. Kidd v. Young, 185 S. W. (2d) 173, reversed on other grounds, 144 Texas 322, 190 S. W. (2d) 65; Stiles v. Hawkins (Com. App.), 207 S. W. 89; Frame v. Whitaker, 120 Texas 53, 36 S. W. (2d) 149; Nesbitt v. First National Bank of San Angelo, 108 S. W. (2d) 318; Caffey's Ex'rs v. Caffey (Civ. App.), 35 S. W. 738.

■ The fact that the judgment taxed costs against Mrs. Scott in both her capacity as executrix and as an individual does not

alter the situation. For since the estate was fully administered, the action of the trial court was erroneous in that regard. That point is not preserved for appeal and may not be here disturbed.

The case of Graves v. Moon, 92 S. W. (2d) 290 (Civ. App., writ refused), is distinguishable. The opinion in that case affirmatively shows that at the time of trial there were unpaid debts of the estate. The holding in Nesbitt v. First National Bank of San Angelo (Civ. App.), 108 S. W. (2d) 318, is also distinguishable. That decision turned on the fact that the bank sued in its capacity of executor, and there was no sworn denial that it was not entitled to recover in such capacity under Article 2010, Section 3. The statement of facts being silent on the condition of the estate, it was held that it must be presumed that the estate was still in the course of administration. As stated, the record in this case affirmatively shows that there were no debts or claims of others outstanding against the estate, and that there was a sworn denial that Mrs. Scott was not entitled to recover in her capacity as executrix.

We therefore hold that Article 3716 is not applicable in this case; and as against such objection, the testimony of Pugh and wife as to the alleged compromise agreement was admissible.

■ The facts were sufficient to raise the issue of accord and satisfaction. Pugh was insolvent and in need of more money. Scott, on account of ill health, wanted to close out the debt due him by Pugh. Suit and foreclosure through ordinary legal channels would have been of considerable trouble and expense to Scott, and would have consumed time. In view of Pugh's insolvency, additional difficulties might have been encountered. Although Scott held a mortgage on the crops and machinery, and had the right to have them sold if necessary to satisfy his debt, Pugh was not previously bound to conduct the sale of his machinery or to employ others to print advertisements, circulate them, and conduct a public auction. Nor was he bound to sell his machinery at that particular time. And he was not previously bound to deliver to Scott the entire proceeds of the sale of the growing wheat, regardless of the quantity which might be harvested or the price which might be received therefor.

The evidence is that there were some 600 acres of growing wheat, which should have yielded about 25 bushels to the acre, totaling an estimated 15,000 bushels. "As a general rule judicial

notice will not be taken of the market price of wheat at any particular date, but facts of common knowledge relating to the value of wheat will be judicially noticed." 31 C. J. S. 705; Commercial State Bank v. Palmerton-Moore Grain Co., 152 Wash., 89, 277 Pac. 389. The court judicially knows that the market price of wheat fluctuates, and that at the time of the agreement there was a great war in Europe and in the Orient, which caused a growing demand for wheat. At the time of the compromise agreement the wheat crop looked promising, and Scott stood a good chance to recover a substantial sum, the amount of which was not at that time precisely known, from the sale of the anticipated harvest of the wheat in the future. In addition thereto, Scott was to receive whatever was received from the sale of the farm machinery. Pugh performed his part of the agreement.

■ The above constituted a new and sufficient consideration for the promise to release the debt. There was no guarantee in the contract as to the quantity or price of the wheat; and in view of the fact that Scott stood to gain on a rising war market if the crop had been successful, the failure of the crop did not affect the validity of the contract. The jury found that Scott agreed to accept, and did accept, the sum delivered by Pugh,—the total proceeds from the sale of the machinery and the wheat, and that Scott cancelled the balance due on the notes. Scott executed a release of the lien, in which it was recited that he had received from Pugh full payment to satisfy such lien. The findings of the jury were sufficient for the trial court to enter judgment in favor of Pugh. Branch v. Wafford (Com. App.), 267 S. W. 260; Ferguson-McKinney Dry Goods Co. v. Garrett, (Com. App.), 252 S. W. 738; Bradshaw v. Davis, 12 Texas 336; Overton v. Conner, 50 Texas 113; Simms Oil Co. v. American Refining Co. (Com. App.), 288 S. W. 163, affirming (Civ. App.), 282 S. W. 894; 1 Tex. Jur., p. 253, sec. 8, and cases cited in footnotes; 1 Amer. Jur., p. 238, sec. 39; 1 C. J. S., p. 489, sec. 22, and p. 505, sec. 29.

The judgment of the Court of Civil Appeals is reversed and the judgment of the trial court is affirmed.

Opinion delivered November 27, 1946.