**BUNNELL v. BUNNELL et ux.**

No. 2809.

Court of Civil Appeals of Texas.
Tenth District.   Waco.

Jan. 13, 1949.

Gib Callaway, of Brownwood, L. Brann, of Hamilton, for appellant.

Bryan, Maxwell & Bryan, of Waco, P. M. Rice, of Hamilton, and Edward Brown, of Cisco, for appellees.

LESTER, Chief Justice.

This is a suit brought by Miss Emma Bunnell against her brother, Sam Bunnell, and his wife to recover a three-fourths undivided interest in and for partition of a 164 acre farm in Hamilton county. Plaintiff sought to establish (1) an express trust, and (2) a resulting trust. The plaintiff pleaded and the evidence shows that for several years prior to 1942 plaintiff and defendant and their mother, Mrs. Mary B. Bunnell, lived on a farm of 175 acres in Coryell county; that they owned an undivided interest in said farm in the following proportions: the plaintiff one-fourth; the defendant one-fourth, and Mrs. Mary Bunnell one-half, with rights of homestead. On or about October 1, 1942, the United States Government condemned the farm for government purposes and agreed to pay approximately the sum of $3696.00, but the money was not paid until November 27, 1943. On or about November 20, 1942, the defendant purchased from R. G. Limmer the 164 acre farm in Hamilton county and took the deed in his name only. The latter part of December, 1942, the defendant moved to said farm, taking his family, the plaintiff and his mother with him, and they all resided there together until his mother's death in February, 1946. The deed provides for a consideration of $6187.50 as follows: the assumption by defendant of $4251.40, representing two loans held by the Federal Land Bank, and the execution of a note by him for the sum of $1936.00, due and payable to said R. G. Limmer on or before October 1, 1943. Said note bore five per cent interest from date and also provided for the usual ten per cent additional as attorney's fees. The deed contained the following clause: "And it is understood that the said Sam Bunnell has sold his farm in Coryell county, Texas, to the Federal Government for Army purposes, and it might be some time before he gets the money on said farm, and if the said Sam Bunnell does his part to hurry the completion of the purchase by the Government of his farm, and it is not completed by the time the said $1936.00 note has matured, that the grantors herein will give said Sam Bunnell a reasonable time in which to complete the transaction with the Government so that the said Sam Bunnell can get the cash to pay said note off."

Plaintiff alleged that at the time the deed was executed to the defendant that it was the mutual agreement between the plaintiff, the defendant and their mother that each would own the Hamilton county farm in the same proportion as they owned the Coryell county farm, and that the de-

fendant holds three-fourths of said land in trust for her; which represents the proceeds of her one-fourth interest in the Coryell county farm that she had received under the will of her father and the one-half interest of her mother, now deceased, that she was entitled to as devisee under the terms of her mother's will. The defendant pleaded a denial of the agreement to purchase the farm for the benefit of anyone except himself. He also pleaded that after the death of his father he paid $1529.30 that his father owed at the time of his death; that he had incurred expenses in the sum of $1422.84 in the payment of his debts and support of his mother and for the support of the plaintiff; that he had paid out the sum of $1000.00 for improvements on the Coryell county farm, for all of which he was entitled to be reimbursed. He further pleaded that when the money was received from the Government that his mother endorsed the check and gave him her part of the proceeds.

Relating to the issue of trust, the court submitted the following issue:

"Do you find from a preponderance of the evidence that Mrs. Mary B. Bunnell, Sam Bunnell and Emma Bunnell on or about the 20th of November, 1942, had an agreement that the proceeds received by them from the sale of the Coryell County farm should be invested in the R. G. Limmer farm in Hamilton County, Texas, and owned by them in the same proportions as the Coryell County place was owned; that is, one-half to Mary B. Bunnell, and one-fourth each to Sam Bunnell and Emma Bunnell?"

to which the jury answered "No."

As to the allegation of gift of the proceeds to the defendant, the court submitted the following issue:

"Do you find from a preponderance of the evidence that Mrs. Mary Bunnell, after receiving the check from the Federal Government in payment for the Coryell County land, endorsed the same and gave it to the defendant, Sam Bunnell, with the intention that her portion thereof or any other part of the proceeds belonging to her was a gift to the said Sam Bunnell?"

to which the jury answered "Yes".

Plaintiff filed no written objections to the court's charge and requested no additional issue. After the verdict of the jury was returned the plaintiff filed her motion for judgment non obstante veredicto, which was by the court overruled.

Plaintiff first contends that the answer of the jury to Special Issue No. 1 was contrary to the undisputed evidence and that the court should disregard such answer and find as a matter of law that such an agreement did in fact exist. No witness testified that any agreement was made between the parties that the defendant should buy the Hamilton county farm and that each would own it in the same proportion to their interest in the Coryell county farm, or that anything was said by them to that effect at or prior to the time the farm was deeded to the defendant. Mrs. Freeman, the defendant's sister, testified that in the summer of 1943, several months after Limmer had deeded the farm to Sam, that she asked him, "When you bought this farm did you put my Mother and Emma's name in it, and he said, I have not, simply because have not put anything on it yet, I did not want to bother them with it, I never beat any of my people out of anything and don't aim to now." This witness further testified that she had another conversation with the defendant after he had bought and moved on the farm in which she asked him "if he had Mamma and Emma's name on the deed. He said no, he did not, because this is an independent deal, don't have anything to pay down on it and he did not want to risk them in a law-suit. I said, well, if you do get the Government money, are you going to put it on the place, and he replied, of course, I would not think of anything else." Another sister, Mrs. Lula Harris, concerning a conversation she had with him after he bought and moved on the farm, testified: "I said, Sam, they tell me you bought this in your name and did not put Emma and Mamma in the deed. He said, yes, I did, but it is like this, the Federal Government has not paid for it and naturally slow, and if I had bought it in Mamma's and Emma's name and they sued me on it, all of us, that would get Emma and Mamma. They can't get their part and I am trying to keep from

losing it." The plaintiff testified that when the defendant bought the farm she asked him about the deed being in all of their names and he said "if all of the names were included in the deed he would not get a loan." She was then asked: "Did Sam tell you anything about what interest you had in the place?" and she answered: "No, he did not. Q. Did he tell you that he did not put your name on it then? A. I knew it."

All of these statements on the part of defendant, as testified to by the witnesses, were made after he purchased the Hamilton county farm. Considering the statements in connection with the clause in the deed to the effect that he was to pay the $1936.00 note out of the proceeds he received from the Coryell county farm, and other circumstances reflected by the record, they are not sufficient to establish as a matter of law that the parties, at or before the time the defendant purchased the Hamilton county farm, had agreed that each would own said farm in the same proportion that they owned the Coryell county farm, or that they had any character of agreement that the defendant would purchase the land for the benefit of all parties.

Plaintiff contends that the finding of the jury that Mrs. Mary Bunnell gave the defendant her portion of the proceeds of the Coryell county farm was contrary to the overwhelming weight of the evidence and the judicial admissions of the defendant. This issue bears upon the plaintiff's claim to the one-half interest in the Hamilton county farm that she alleges she is entitled to recover as a devisee under her mother's will. The record shows that in June of 1933 her mother owned a one-half interest in the Coryell county farm and on said date she executed her will, by which she devised her property, both personal and real, to the defendant upon the condition that he would support the plaintiff during her lifetime. In this connection she alleged and the jury found that the defendant had violated or repudiated such provision. . The record further reveals that when the farm was sold all of the property her mother owned was her one-half interest in the proceeds, and if she executed a

gift of the proceeds to the defendant, as found by the jury, she did not own any property in 1946, when she died. The rule is that when a case is tried with a jury, that if the evidence creates an issue of fact it should be submitted to the jury for decision. The evidence shows that at the time of the alleged gift there were surviving nine children, five daughters and four sons, the defendant being the youngest son; that the mother had lived in his home with his family for several years, and there was a great deal of evidence to the effect that the defendant was always kind and attentive to her and contributed to her needs both physically and financially; that she was very fond of the defendant and appreciated deeply his kindness to her. The defendant's son testified that he was present when the Government check was endorsed and that his grandmother, Mrs. Mary Bunnell, after endorsing the same, gave the proceeds to the defendant, saying that she could not start to repay him for what he had already done for her. This witness also testified that he had heard his grandmother say a number of times that she could not start to repay defendant for what he had done for her and she said that she wanted him to have the money. The defendant's sister, Mrs. Freeman, testified that she was present when the check was endorsed by her mother. She said she did not hear her mother say anything about giving the proceeds to the defendant and she was sure that nothing was said about it. Then she was asked to go ahead and state what was done with the check and she answered, "Well, she gave it to Sam and I was coming home." H. G. Bunnell, a brother, testified that he had a conversation with Mrs. Freeman after the alleged gift. He said that his sister was "aching" because his mother had given it to Sam; that she seemed to be pretty angry and dissatisfied because she had done so. Tom Bunnell, another brother of the plaintiff and defendant, testified that he visited his mother between the time the Government condemned the farm and the time the money was paid and the question came up as to what she was going to do with the money and that she stated that if she had anything she wanted Sam to have it. Without re-

producing all of the evidence in support of the finding of the jury to said issue, we are of the opinion that the same is clearly sustained by the evidence.

■ Plaintiff contends that the answer of the jury to Special Issue No. 2 should be disregarded by reason of the defendant's judicial admissions made in his pleadings, because he first pleaded in paragraphs 6 and 7 certain debts he had paid for his father and mother and improvements that he had made on the Coryell county farm, and in paragraph 8 he pleaded the alleged gift from his mother. By doing so we are unable to find that he ever admitted anything against his claim to the gift of the proceeds of said check. Under Rule 84, Texas Rules of Civil Procedure, a defendant has a right to plead as many several matters, whether of law or fact, as he thinks necessary for his defense, and which may be pertinent to the cause, provided he files them at the same time and in due order of pleading.

Plaintiff says that the evidence establishes as a matter of law a resulting trust in favor of the plaintiff. The plaintiff did not pay any part of the purchase money at the time the legal title vested in the defendant, nor was she legally bound to pay any part thereof in the future to Limmer or to the defendant, but it was the defendant who assumed the indebtedness to the Federal Land Bank and the one who executed the $1936.00 note to Limmer and he alone was bound thereby. The evidence shows that approximately a year after he acquired legal title and moved upon the premises the Government paid the money in the sum of $3696.00. Of said amount, after the gift of his mother, the defendant owned three-fourths of said amount, which amounted to $2772.00, and plaintiff was the owner of one-fourth thereof, amounting to $924.00. After the plaintiff and her mother endorsed the check the defendant cashed the same and deposited the money in his own name, and he later paid the $1936.00 note to Limmer and made payments on some of the indebtedness to the Federal Land Bank and made some improvements upon the farm. There is also evidence of plaintiff and her sister that when the Government check was endorsed that he told them he was going to apply the money on the place, but this was long after he had gotten his deed.

■ In the case of Wright v. Wright, 134 Tex. 82, 132 S.W.2d 847, 849, points 4-5, opinion by Commission of Appeals, in speaking of a resulting trust, it held: "It is a familiar law that a trust must result, if at all, at the very time a deed is taken and the legal title vested in the grantee. No oral agreement before or after the deed is taken, and no payments made after the title is vested, will create a resulting trust, unless the payments are made in pursuance of an enforceable agreement upon the part of the beneficiary existing at the time the deed is executed. The trust must arise out of the transaction itself. The fundamental idea is that the beneficial title follows consideration, and unless the one claiming the trust has paid the consideration, or become bound for same, at the very time of the making of the deed, no trust is created."

In Solether v. Trinity Fire Ins. Co., 124 Tex. 363, 78 S.W.2d 180, 182, points 2-3, opinion by Commission of Appeals, it is held: "A resulting trust is a creature of equity. It arises from the transaction, and is not created by contract. * * * A resulting trust must arise at the very time the legal title passes. * * * Acts of the parties after the title is taken will not constitute a resulting trust." See authorities therein cited.

In Lusk v. Parmer, Tex.Civ.App., 87 S. W.2d 790, 791, 792, point 2, it is said: "A resulting trust must result, if at all, the instant the title passes, and will not arise on other than the state of facts existing when the property is acquired. It cannot be created by subsequent occurrences, and, after the legal title has once vested in the grantee of a deed, a resulting trust cannot be raised so as to divest that legal estate by the subsequent application of the funds of a third person to the improvement of the property or to satisfy the unpaid purchase money."

As early as 36 Tex. 661, 663, it is held in Lacey v. Clements: "Smith paid no part of the purchase money at the time the purchase was made from the stockholders. No subsequent advance of money, after the

purchase was complete, can become the subject of a resulting trust; the advance of money must be coeval with the execution of the deed, in order to create a resulting trust."

■■ Another rule is that where a trust is claimed in part only on a tract of land by reason of payment of part of the consideration, the amount so paid must be established with sufficient certainty that a court of equity may be able to determine the trust upon an equitable pro tanto basis. Smalley v. Paine, 62 Tex.Civ.App. 52, 130 S.W. 739, point p. 751; Wright v. Wright, 134 Tex. 82, 132 S.W.2d 847, point 6. The evidence is very indefinite as to the amount of the proceeds of the sale of the Coryell county farm owned by the plaintiff that went to the payment of the $1936.00 note or the payment of the indebtedness due the Federal Land Bank or the amount of the improvements made upon the farm. After the gift from his mother the defendant was the owner of three-fourths of the proceeds received from the sale of the Coryell county farm, which amounted to $2772.00. There was no issue submitted and none requested as to the amount of plaintiff's money used by the defendant in the payment of the foregoing items and the evidence does not establish such amount with any degree of certainty. The jury having found that there was no agreement between the plaintiff at or before the time the defendant took legal title to the land in question in his own name that he should buy the same for the benefit of all, defeated plaintiff's right to recover upon the theory of an express trust, and as hereinbefore stated, the only issue submitted by the court in relation to the plaintiff's allegations of trust was Issue No. 1, to which there was no objection and no additional issue requested, and failing by far to establish a resulting trust as a matter of law, she also is deprived of the right to recover upon this theory.

■■ The defendant pleaded that he had paid debts of his father and mother and had supported his father, mother and the plaintiff herein, and had at his own expense erected certain improvements upon the Coryell County farm for which he was entitled to be reimbursed. **The evidence** shows that sometime prior to his father's death his father and mother lived at Aleman and at Ireland, and he was permitted to testify as follows:

"Q. Do you know who paid the rent to those gentlemen that was paid (referring to the landlords)? A. Yes, I paid the rent and have receipts for a whole lot of it.

"Q. Whose money was that you paid that with? A. Mine.

"Q. Do you remember what the amount of the rental was? A. Yes, five dollars.

"Q. What was it? A. Five dollars a month.

"Q. About how many months did you pay Mr. Shanks rent? A. Well, I could not be definite, but in the neighborhood of twenty-four to thirty months.

"Q. How long did you pay rent to the other gentlemen whose names you mentioned? A. For some length of time.

"Q. In other words, over a period of four years altogether? A. I rather think about five years."

Concerning the improvements alleged to have been made by the defendant on the Coryell County farm, he was permitted to testify that during the time he lived on the farm he made certain improvements, such as building fences, a barn, chicken-house, etc., amounting to approximately $1000.00; that he performed the labor himself in making said improvements, but he did not testify that the same were made with the consent or knowledge of his mother. The plaintiff, in rebuttal of the defendant's allegation that he had supported his mother and the plaintiff, introduced evidence to the effect that his mother, during the time she lived with him, drew old age assistance which was used for their support. The defendant was permitted to testify that he personally saw the pension checks that came to his house; that the monthly payments ranged in amounts from eight to twenty-four dollars; that he did not get any of the proceeds of said checks. All of the foregoing testimony was objected to by the plaintiff at the time it was offered, on the ground that it was in violation of Article 3716, Vernon's Ann.Civ.Stats. It is well settled that the language contained in

said article should be strictly construed and its construction will not be extended beyond the plain meaning contained therein. Pugh v. Turner, 145 Tex. 292, 197 S.W.2d 822, 172 A.L.R. 707; Hutto v. Cook, 139 Tex. 571, 164 S.W.2d 513. We are of the opinion that the above article does not apply to the facts of this case. The plaintiff's suit is based upon an allegation of trust. She alleges that she is entitled to an undivided interest in the Hamilton County farm by reason of an agreement between herself, her mother and the defendant to the effect that the proceeds of the Coryell County farm should be invested in the Hamilton County farm, and that each should own an undivided interest in it in proportion to the interest that each owned in the Coryell County farm; that she and the defendant each were the owners of a one-fourth undivided interest in said Coryell County farm as the devisees under their father's will and that her mother was the owner of a one-half interest in said farm; that her mother's one-half interest in the proceeds of the sale of said farm went into the Hamilton County farm and that she is entitled to receive her mother's part as a devisee under her mother's duly probated will. She brought this suit to establish said trust against the defendant individually, and not as executor of his father's or mother's estate. It is true that the plaintiff and the defendant are the heirs of their deceased father and mother, but the plaintiff is not seeking to recover the land in question as an heir. It has been definitely declared by the Supreme Court that this article does not apply to devisees or legatees. Pugh v. Turner, 145 Tex. 292, 197 S.W.2d 822, 172 A.L.R. 707; Newton v. Newton, 77 Tex. 508, 14 S.W. 157; Mitchell v. Mitchell, 80 Tex. 101, 15 S.W. 705; Garrett v. Garrett, 124 Tex. 330, 78 S.W.2d 157; Houston Transfer & Carriage Co. v. Williams, Tex.Com.App., 221 S.W. 1081; Lassiter v. Bouche, Tex.Com.App., 14 S.W. 2d 808, 809; Logan v. Logan, Tex.Civ.App., 112 S.W.2d 515, 525; Wootters v. Hale, 83 Tex. 563, 19 S.W. 134. Under Article 3716 a witness is permitted to testify to facts that such witness may know of his own knowledge so long as the knowledge of such facts is not a part of the transaction with or statement by the deceased, and some of the testimony objected to comes within this rule. Taylor v. Jones, Tex.Civ. App., 135 S.W.2d 767; Wideman v. Coleman, Tex.Com.App., 17 S.W.2d 786; Harris et al. v. Seinsheimer, 67 Tex. 356, 3 S. W. 307.

We are further of the opinion that the testimony was rendered immaterial since the court did not submit any issue as to the value of the improvements alleged to have been made by the defendant, and none of the claims asserted by him for which he sought reimbursement and in connection with which the testimony was admitted formed any part of the judgment entered by the trial court. The court's judgment simply provided that the plaintiff take nothing by her suit.

Plaintiff says the case should be reversed and remanded on account of misconduct of the jury. Five of the jurors who served in the trial of the case were introduced as witnesses. Plaintiff placed three of them upon the stand in support of her allegations of misconduct. The defendant placed upon the stand the other two in rebuttal. There was a conflict in their testimony as to whether such misconduct occurred. The trial court did not file findings of fact nor was he requested to do so. The rule is that in the absence of such findings, and when there is sufficient evidence to support the court's action in overruling the motion, it will be presumed that the court found that the misconduct did not occur and its judgment will not be disturbed in this respect.

We have considered the other assignments raised by plaintiff and they are hereby overruled.

Finding no reversible error, the judgment of the trial court is in all things affirmed.