**Rocky REAGAN, Jr., Appellant,**

**v.**

**NATIONAL BANK OF COMMERCE OF SAN ANTONIO, as Independent Executor of the Estate of William B. Lupe, Deceased, Appellee.**

**No. 14607.**

Court of Civil Appeals of Texas.

San Antonio.

Sept. 6, 1967.

Morrill & Patton, Beeville, for appellant.

Trueheart, McMillan, Russell & Hoffman, San Antonio, for appellee.

CADENA, Justice.

Defendant, Rocky Reagan, Jr., appeals from a judgment rendered after a nonjury trial against him and in favor of plaintiff, National Bank of Commerce of San Antonio, Independent Executor of the Estate of William B. Lupe, Deceased, on a promissory note in the sum of $25,000.00, dated December 30, 1960, and payable on March 15, 1962.

The following facts are undisputed or stipulated: (1) The note in question was executed by defendant and delivered to the payee, William B. Lupe, who died on September 23, 1964. (2) The note, which bore no evidence of payment on its face, was in the possession of Lupe at the time of his

death and came into the possession of plaintiff in its capacity as the duly qualified and acting independent executor of Lupe's estate.

The following findings of fact were made by the trial court: (1) For several years prior to December 30, 1960, the date of the note, defendant and Lupe, as partners, were carrying on an irrigated farming and cattle feeding operation in Maverick County on 900 acres of land which the partnership leased from its owners, Lupe and others, at an annual rental of $20,000.00. (2) The partnership was dissolved in December, 1960, and the note in question was executed by defendant in connection with the winding up of the affairs of the partnership. (3) Thereafter, defendant leased the land in question from Lupe and the other owners at an annual rental of $20,000.00. (4) Defendant continued the farming and cattle feeding operation on the land, paying the agreed annual rental until the end of the year 1962. (5) At the end of the year 1962, Lupe and defendant agreed that if defendant would surrender possession of the land, except for the portion on which defendant's feeding operations were conducted, prior to January 31, 1963, and pay to Lupe the sum of $1,500.00 per month during the time defendant used the feeding area, Lupe would not attempt to enforce payment of the $25,000.00 note. At the end of January, 1963, defendant surrendered possession of the land to Lupe, with the exception of the feed lot area, which he continued to use until some time in May, 1963, paying to Lupe the sum of $6,300.00. (6) Between January, 1963, and September 23, 1964, the date of his death Lupe made no demand on defendant for payment of the note. (7) Only 750 acres of the 900-acre tract were suitable for farming. (8) Lupe's knowledge of the defendant's inability to pay the indebtedness evidenced by the note was one factor inducing him to make the 1962 agreement.

The conclusions of law filed by the trial judge were to the effect that the fact that Lupe remained in possession of the note,

which bore no evidence of payment, until his death, conclusively established that the note evidenced an existing indebtedness, and that the 1962 agreement between Lupe and defendant was not supported by consideration and did not have the effect of discharging the indebtedness evidenced by the note.

Defendant contends that the trial court erred in holding that the 1962 agreement between defendant and Lupe did not effect a satisfaction and discharge of the note.

All of the trial court's findings of fact are supported by the testimony of Edwin S. Brown who, at all relevant times, was a business associate of Lupe and had custody of Lupe's business records. He testified that as part of the consideration for defendant's surrender of possession of the land, and the payment by defendant of $6,000.00, Lupe agreed that he would not bring suit on the note and would make no effort to collect the note. He further stated that defendant surrendered possession of the land and paid the agreed rental for his continuing possession of the feeding area, which constituted only a small portion of the 900 acres, until May, 1963. Other testimony by Brown supports the court's findings relating to the circumstances under which the note was given and the continued operation of the farm by defendant for two years, as well as the payment by defendant of the agreed annual rental of $20,000.00 until the end of 1962. His testimony also shows that the $6,300.00 paid by defendant during the year 1963 was payment of rent for the feeding area, and not payments on the note.

In view of Brown's testimony, we do not consider plaintiff's contention that the trial court should have excluded, under the provisions of the "dead man" statute (Article 3716, Vernon's Ann.Civ.St.), defendant's testimony relating to the agreement between defendant and the decedent, Lupe.

We are aware of the many decisions to the effect that possession by a payee of a

promissory note which contains on its face no evidence of payment establishes, prima facie, the existence of the indebtedness evidenced by the instrument, and casts upon the obligor the burden of pleading and proving facts showing a discharge of the debt. Twin City Bowling Lanes, Inc. v. C. I. T. Corp., 376 S.W.2d 94 (Tex.Civ.App., 1964, no writ). However, we are aware of no decision supporting the trial court's conclusion that such possession of the instrument by the payee *conclusively* establishes that the indebtedness has not been discharged.

Section 122 of the Negotiable Instruments Act (Article 5939, § 122, Vernon's Ann.Civ. St.) [1] provides that a renunciation by the holder of a negotiable instrument of his rights against any person liable thereon must be in writing, unless possession of the instrument is surrendered. However, Sec. 119 of the same statute expressly recites that a negotiable instrument is discharged " * * * 4, By any * * * act which will discharge a simple contract for the payment of money * * *."

 A discharge of the indebtedness under Par. 4 of Sec. 119 may take place even in the absence of a written release or delivery of the instrument to the primary obligor. Pugh v. Turner, 145 Tex. 292, 197 S.W.2d 822, 172 A.L.R. 707 (1946). Here, the trial court found that Lupe, induced in part by the knowledge that defendant had no available means with which to pay the indebtedness, agreed to accept, and did accept, defendant's surrender of possession of the leased land, and the payment by defendant of $6,300.00, as satisfaction of the debt evidenced by the note. If defendant was in possession of the land as a tenant, he was under no obligation to surrender possession of any part thereof to Lupe. It is true, as plaintiff points out, that the evidence relating to the terms of the lease was rather vague, but the evidence clearly establishes that defendant and Lupe negotiated on the assumption that defendant was entitled to remain in possession of the land. Because of the surrender of possession by defendant, Lupe was able to lease the land to a third party, who raised a crop thereon in the year 1963.

It appears, then, that Lupe did receive valuable consideration for his agreement. In consideration of Lupe's agreement, defendant agreed to, and did, take action which he was under no obligation to take. The agreement by Lupe to accept the new obligations assumed by defendant as a discharge of defendant's obligations under the note operated as a discharge of the instrument under Sec. 119, Art. 5939. Hall v. Wichita State Bank & Trust Co., 254 S.W. 1036 (Tex.Civ.App., 1923, writ ref'd.)

The judgment of the trial court is reversed and judgment is here rendered that plaintiff take nothing.

---

[1]. All of the relevant transactions took place prior to July 1, 1966, the effective date of the Uniform Commercial Code in Texas. Therefore, this case is governed by the provisions of the Negotiable Instruments Act which were in effect at the time of these transactions. The provisions of Par. 4 of Sec. 119 are substantially embodied in Sec. 3–601(2) of the Uniform Commercial Code.