## WEATHERSBY v. HARRIS.

### No. 12306.

Court of Civil Appeals of Texas. Galveston.

Nov. 29, 1951.

Rehearing Denied Jan. 10, 1952.

1. All three points are fully set out on page 890 of Vol. 239 S.W.2d.

George L. McGhee, Geo. L. Charlton, Houston, for appellant.

Fowler & Conn, Philip M. Shafer, Houston, for appellee.

CODY, Justice.

After this suit was instituted by Millie Weathersby against her brother-in-law, John Weathersby, she died and in her place was substituted her independent executrix and residuary legatee. The purpose of the suit was to have it determined that a quitclaim given by Millie Weathersby to John Weathersby in 1940, shortly after her husband's death, placed the legal title to four parcels of land therein described, which land is located in Harris County, in the said John Weathersby to hold same in trust

for her, pending the administration of the estate of her deceased husband and pending the determination of the assertion of the claim by one Bessie Weathersby that she was the surviving wife of the deceased, and that Millie Weathersby was not. The suit was also brought to have it determined that the general warranty deed given by Millie Weathersby to John Weathersby in August, 1946, shortly after the administration on the estate of Millie Weathersby's deceased husband was closed was procured by duress practiced on her by the said John Weathersby. The suit was also brought to recover $3,600.00, which it was alleged had been collected by John Weathersby, which said sum of money it was alleged was the proceeds from the sale of a parcel of land situated in Louisiana belonging to Millie Weathersby. The suit was also brought to recover the proceeds of a fire insurance policy covering improvements which were located on one of the parcels of real estate in Harris County and which was damaged by fire.

The answer of John Weathersby consisted of various pleas of limitation. He specially plead that the quitclaim was executed and delivered to John Weathersby by Millie for valuable consideration and that the general warranty deed of 1946 was executed and delivered to confirm the quitclaim deed and upon the understanding that he would continue to provide a home for Millie Weathersby until her death.

In answer to Special Issues, the jury found:

(1) that the quitclaim of May 31, 1940, was executed and delivered by Millie to John Weathersby with the express understanding that the property described therein was later to be reconveyed to her;

(2) that when Millie Weathersby executed and delivered the general warranty deed of August 7, 1946, to John Weathersby she knew it was a deed;

(3) that in executing and delivering said general warranty deed Millie acted under duress to the effect that if she did not so execute and deliver said deed she would be sent to the penitentiary;

(4) that John Weathersby did not pay all of the proceeds of the sale of the Louisiana property to Millie;

(5) that the amount of the proceeds which he so failed to pay Millie was $3,200.00;

(6) that in addition to the insurance money collected by him, the sum of $5,392.00 would compensate John Weathersby for the money he expended in rebuilding the house which had been injured by fire;

(7) that Rose Harris (the substitute plaintiff below, and appellee here) did not persuade Millie Weathersby to attempt to repudiate her deed to John Weathersby.

John Weathersby seasonably presented his motion for judgment notwithstanding the verdict upon the grounds (1) that the undisputed evidence showed that the quitclaim had been executed in 1940 and suit for its cancellation was not filed until 1948, and (2) that appellee's pleading and evidence showed that said deed was executed and delivered for the sole purpose of putting the properties therein described beyond the reach of one Bessie Weathersby who was asserting an interest therein; so that plaintiff below (appellee here) did not come into equity with clean hands, and the court should not aid her by setting aside her own wrongdoing.

The court refused the aforesaid motion, and rendered the judgment which is here appealed from. Appellant predicates this appeal upon six Points. The first Point urged by appellant is that the court erred in overruling his motion for mistrial based upon improper conduct of appellee's counsel in seeking to build up prejudice before the jury against appellant throughout the course of the trial.—The second Point is the error of the court in overruling appellant's motion for mistrial based upon the improper argument of appellee's counsel to the jury.

■ The record before us is completely silent as to what appellee's counsel may have argued to the jury. There is no bill of exception showing any remarks by appellee's counsel or complaining or undertaking to show that the same were in-

jurious to him, and consequently there is nothing for us to pass upon with respect to improper argument before the jury.

The issues made by appellee's pleading were to the effect that appellee reposed absolute confidence in her brother-in-law and that he induced her to deed by quitclaim the parcels of property to him so as to place said property beyond the reach of any claim thereto which was made by Bessie Weathersby who claimed to have been the wife of Millie's husband. He, the said John Weathersby, having assured her that he would keep and manage same for her and would turn the property back to her when the danger from the claim of Bessie Weathersby had passed. Appellee's pleadings were further to the effect that Millie was an old, uneducated negro, inexperienced in business affairs, but that her brother-in-law was a shrewd, experienced and competent business man and that it was in compliance with his advice that Millie transferred the property in question to appellant.

It was further the pleadings of appellee that after the claim of Bessie Weathersby to have been the wife of Millie's deceased husband was rejected and after the probate court found Millie to have been the surviving wife and the administration was closed, appellant threatened Millie that if she did not deed the property which had been quitclaimed to him, he would have her sent to the penitentiary because of having transferred the property to him and that under and by force of the said threats and induced thereby, Millie, by general warranty deed of August 7, 1946, executed and delivered a deed transferring the property which is described in the quitclaim deed to appellant.

It was the pleadings of appellant that he took Millie into his home following the death of her husband (appellant's brother) in 1940 and he alleged that the quitclaim was executed and delivered to him by Millie upon the understanding that he would give her a home and support her for the rest of her life, and appellant alleged that the general warranty deed was executed and delivered by Millie in con-

firmation of the quitclaim and of the agreement to furnish her support so long as she lived. The deposition of Millie was taken while she remained plaintiff in the case and it appeared therefrom that she did not know how old she was but that she was very old, that she could not read "a speck"; that she and her husband had taken appellant into their home when he was young, "in his shirttail", and had raised him, and she testified that he had sent her to the Jeff Davis Hospital in Houston and that she sent for him to come to see her while she was in the hospital but that he would not come, and her testimony was sufficient to support her allegations that he had gotten her to sign a quitclaim and that she would not have done so if John had not told her that it was necessary in order to keep the property from the woman Bessie. She testified that she did not know that the general warranty deed which she executed in 1946 was a conveyance of the land to John. She testified further on direct examination that those were the only threats made to her by John. On cross-examination, however, she was asked if she knew why her testimony was being taken and she replied, " * * * To take that little stuff and give it to John. You see, I ain't got—wait, let me talk to you: You see, I ain't got nobody in the world but that Power over there to take care of me. John is got his oil wells and eight or ten houses. I ain't got nothing. He has got mine and his'n, too." She further testified on cross-examination that she had told her lawyer to try to get her land back from John and she then testified that she knew she had deeded the property to John so that if the woman won the lawsuit she could not get it, but she thought John would give the land back to her when the suit was over. She further testified on cross-examination as follows:

"Q. Did John ever say he was going to hurt you, or anything like that? A. Hurt me?

"Q. Yes, to make you sign these papers? A. He told me they would send me to the penitentiary, and I was scared of that.

"Q. What was he going to send you to the penitentiary for? A. I don't know."

During the course of the trial appellee was pertinacious in asking questions of appellant designed to show that he was an experienced and shrewd dealer in real estate, and appellee undertook to rebut his testimony showing that he furnished her with trips over certain southern states, and appellee's counsel, in remarks addressed to the court, but in the presence of the jury, commented upon the fact that appellant was a very, very willing witness, which the court apparently considered as being addressed to the fact that appellant was somewhat prone to inject selfserving declarations which were not called for by questions which were asked. The evidence incidentally did show that appellant was a man of considerable property, which he had accumulated in real estate transactions and as a preacher, but we are unable to agree with appellant that the purpose of said questions was to contrast the wealth of appellant with the poverty of appellee. In this connection it was the position of appellant that he had done everything for Millie and that appellee had done nothing and it was no doubt in response to this position that appellee's counsel asked her if she were on a pension. There is no complaint that the court admitted any improper evidence or that he failed to properly instruct the jury not to consider answers which were admitted without objection when requested so to do.

■ After carefully considering the course of the conduct of the trial as reflected by the briefs of the parties and after having read large portions of the statement of facts, we have reached the conclusion that the case was conducted by appellee's counsel in a good-faith attempt to sustain the allegations of their petition and in some instances in which the court sustained appellant's objections to the evidence it was not clear to us upon what ground the objections were sustained. For instance, we think that it was admissible where a plaintiff is reliant on duress, to show whether or not the party, who it was claimed acted under fear, exhibited fear in the presence of a party who it was claimed exercised duress.

We overrule appellant's third Point, which complains that the court should have sustained his motion for judgment notwithstanding the verdict, because plaintiff's pleading and proof was to the effect that Millie conveyed the property here involved to appellant for the purpose of defeating and obstructing the assertion by one Bessie Weathersby of an interest in the land, and that consequently appellee did not come into court with clean hands, and so no court of equity would aid appellee in the enforcement of a trust, the purpose of which was to defraud a third party.

■■ It is not necessary to dissert on when a court of equity will and will not aid in the enforcement of a trust as between the parties. It is sufficient merely to state that the transfer of the property to appellant by Millie worked no injury to Bessie Weathersby because, as the event proved, she was not the wife of Millie's husband. Had it developed that she was, that would have presented a different question. See Rivera v. White, 94 Tex. 538, 63 S.W. 125. The conveyance to appellant was unquestionably upon a trust. Id. So no statute of limitations was available to bar appellee's claim against appellant. And so, we overrule appellant's fourth Point.

■ We overrule the appellant's remaining two Points. We deem the answer of the jury to special issue No. 3 to be a finding of duress which required the cancellation of the general warranty deed of August, 1946, and deem the finding supported by the evidence. Appellee also points out in her brief evidence which authorized the jury to conclude that appellant received $3,600.00 as the proceeds of the sale of the Louisiana property, and retained $3,200.00 thereof.

Judgment is ordered affirmed.