**CALDWELL et al. v. TUCKER et al.**
No. 10020.

Court of Civil Appeals of Texas. Austin.
Feb. 27, 1952.

C. C. Jopling, Miles L. Moss, La Grange, for appellants.

John C. Marburger, La Grange, G. H. Miller, Columbus, for appellees.

GRAY, Justice.

On and prior to March 18, 1948, Kate Joyner and Lizzie S. Little were the joint owners of 216 acres of land in Fayette County, and on that date executed a deed conveying said land to their niece, Mrs. Estelle Walker Tucker, for a recited consideration of $45 cash, "the cancellation

of all outstanding indebtedness and other good and valuable consideration to us in hand paid by our niece * * * the receipt of all of which is hereby acknowledged and confessed." All oil and mineral rights in the land were reserved to the grantors for their lifetime, providing that upon the death of either then such oil and mineral rights should pass to the survivor and, upon the death of the survivor, then to the grantee. On April 5, 1948, Kate Joyner executed her will and devised to her nephew, Will Howard Caldwell, a one-half interest in the above 216 acres of land. Robert Walker Caldwell (brother to Will Howard) was named independent executor. On November 3, 1949, Kate Joyner died, her will was admitted to probate and Robert Walker Caldwell qualified as executor on January 21, 1950.

This suit was brought by Estelle Walker Tucker (joined pro forma by her husband) and Mrs. Lizzie S. Little against Robert Walker Caldwell, individually and as executor of the estate of Kate Joyner, and against Will Howard Caldwell, in trespass to try title to the 216 acres of land. The defendants filed a joint answer, plea of not guilty, asserted ownership of an undivided one-half interest in the land, disclaimed any right as to the other undivided one-half interest, alleged there was no delivery of the deed to Estelle Walker Tucker, that said deed was executed pursuant to an agreement that Estelle Walker Tucker would hold title to the land in trust for Kate Joyner and would reconvey the same at such time as a request for such reconveyance should be made, further alleged that except for the agreement to reconvey the deed was without consideration and that there was a failure of consideration. Defendants also filed their joint cross-action in trespass to try title to the land.

A nonjury trial resulted in judgment for the plaintiffs and denied defendants relief on their cross-action.

The trial court filed findings of fact and conclusions of law.

In support of their allegation that the land was held by Mrs. Tucker in trust for Mrs. Joyner, the defendants offered evidence tending to show that the deed was executed for the purpose of qualifying Mrs. Joyner to receive an old age pension. No such pension was received by her. In this state of the record the question of the right of recovery of the land by reason of such alleged trust is not governed by the motive which may have prompted the execution of the deed. Rivera v. White, 94 Tex. 538, 63 S.W. 125; Weathersby v. Harris, Tex.Civ.App., 244 S.W.2d 888. Further so qualifying herself to receive an old age pension, if such was her purpose, would not necessarily mean that she did not intend the deed to be finally effective as a conveyance. Robertson v. Hefley, 55 Tex.Civ. App. 368, 118 S.W. 1159.

The trial court found that no agreement to reconvey the land was made at the time of the execution of the deed or prior thereto. We will first notice the excluded evidence offered by the defendants to show that the agreement was made. This excluded evidence was that of the executor and the devisee while testifying as witnesses in their own behalf. The executor was asked if he had ever discussed the matter of making the deed with Mrs. Joyner. He answered "Upon several occasions." Objection was made that the testimony was not admissible under the "dead man's statute." Art. 3716, Vernon's Ann.Civ.Stat. The objection was sustained and the executor was not permitted to relate the conversations except for the purpose of a bill of exception. While the bill of exception as to the devisee's testimony does not show what he would have testified, it seems the parties agreed his testimony would be the same as that of the executor, and have so treated it in the briefs.

Before disposing of the points presented as to the trial court's action in excluding the offered testimony of the executor and the devisee, we think it proper to make the following statement. Mrs. Joyner's will directed that all her just debts be paid as soon as practicable after her death, and her undivided one-half interest in the 216 acres of land was the only property mentioned in her will,—it being devised to Will Howard Caldwell. The plaintiffs introduced the inventory and appraisement of the estate of Mrs. Joyner returned

by the executor. He there listed property as belonging to Mrs. Joyner her interest in the 216 acres of land, other real and personal property and debts owing by the estate. The appraisal of the estate was made April 27, 1950. The will was admitted to probate January 3, 1950. The trial was had June 14, 1951, on plaintiffs' original petition filed September 5, 1950, and on defendants' first amended original answer and cross-action filed March 24, 1951. Plaintiffs' suit was against the devisee individually, and against the executor. These defendants filed their joint answer, and also their joint cross-action, in trespass to try title, wherein they styled themselves cross-plaintiffs. Robert Walker Caldwell sued individually and as "Independent Executor of the Will and Estate of Kate Joyner, deceased." Upon being asked if he was the executor of Mrs. Joyner's estate, the executor answered "I am." Under Rule 790, Texas Rules of Civil Procedure, the executor, by filing his plea of not guilty, admitted his possession of the land sued for, and if it did not admit he claimed title thereto, then his cross-action did. The devisee having joined in this answer and cross-action would not change these results. There is nothing in the pleadings, the record, or the briefs before us that suggests administration on the estate of Mrs. Joyner was closed at the time of the trial. We, therefore, conclude that the estate was still in the course of administration and that the devisee was claiming an interest in the land subject to administration. Nesbitt v. First National Bank of San Angelo, Tex.Civ.App., 108 S.W.2d 318, 321. Further, Chief Justice McClendon, speaking for this Court in that case, announced the following formula: "A suit for title to or interest in specific property subject to administration in a pending estate, or to establish a claim or charge against such estate or against specific property subject to administration therein, constitutes an indivisibile, nonseverable cause of action, and the statute applies to the interest or title of all parties holding subject and subordinate to such administration."

■ We conclude that the testimony of the executor was not admissible because of the provisions of the statute, Art. 3716, and that the testimony of the devisee was properly excluded for the reason that the cause of action was not severable. Spencer v. Schell, 107 Tex. 44, 173 S.W. 867; Graves v. Moon, Tex.Civ.App., 92 S.W.2d 290, error ref.; Nesbitt case, supra.

■ In addition to the points above disposed of, appellants present fourteen points. Point one is not briefed and is, therefore, waived. The other thirteen points challenge the sufficiency of the evidence to support some of the findings of the trial court; others allege that some of such findings are against the overwhelming weight and greater preponderance of the evidence, and that some of such findings are contrary to the undisputed evidence.

There is evidence that Mrs. Joyner and Mrs. Little (sisters) were widows, well advanced in age, for many years had resided together and that their property was owned jointly. When Mrs. Tucker, a niece, was a very small child she was taken into their home and continued to reside with them until she was married. The affection of Mrs. Tucker for her aunts and theirs for her has existed since childhood. Mrs. Joyner called her daughter and she called Mrs. Joyner mother. Mrs. Tucker helped Mrs. Joyner pay for furniture for the home and paid doctor and drug bills for Mrs. Little. Mrs. Tucker has for some years resided in the State of Washington, but the correspondence between her aunts and herself has been frequent. It appears that during the lifetime of Mrs. Little's husband he had expressed the desire that Mrs. Tucker have the 216 acres of land described in the deed. So far as this record shows neither Mrs. Joyner nor Mrs. Little have surviving children. Robert Smith Walker, a brother, had resided with them for about five years; prior to the execution of the deed it had been discussed. Mrs. Joyner gave Mr. Walker all of the "data" with reference to the deed, explained it all to him and told him to take it to Mr. F. A. Smith and have him write the deed. This was done, the deed was written and Mr. Walker carried

the deed back and gave it to Mrs. Joyner who read it over. Later Mr. Smith came to the home, the deed was signed by Mrs. Joyner and Mrs. Little, Mr. Smith took the acknowledgments and Mr. Walker signed it as a witness. Afterwards Mrs. Joyner and Mrs. Little told Mr. Walker to take the deed to Mr. Smith and have him record it for "Mrs. Tucker." The deed was recorded and the grantors paid the recording fee. After it was recorded, Mr. Smith returned the deed to Mr. Walker who gave it to Mrs. Joyner who, after reading it, put it in a cedar chest and kept it "for the purpose of paying the taxes for Mrs. Tucker." Mr. Walker said Mrs. Joyner would give him the money and tell him to pay the taxes "theirs and Estelle's." The Assessor-Collector of Taxes for Fayette County said Mrs. Joyner and Mrs. Little told him the land was Mrs. Tucker's and asked him if they could leave it in their names and take care of the taxes for Mrs. Tucker; that he told them they could and that they did pay the taxes on the land. He also wrote Mrs. Joyner and Mrs. Little a letter advising them that they could pay Mrs. Tucker's taxes, and, also advising them that if Mrs. Tucker had no other home and if the land had a house on it, then it could be claimed as a homestead by Mrs. Tucker. After this letter was received it was signed by Mrs. Joyner and Mrs. Little, their signatures were witnessed by Mr. Walker, and then delivered to him by Mrs. Joyner who at the time said: " 'I want you to hold onto this letter in case anything happens to either one of us or both of us, and if it does, turn it over to Estelle Tucker. Then she can go ahead and do what she wants to do with it and build a little house up there on the place as a homestead, anything she wants up there.' That is exactly what she called me to her bed, and she signed that. She signed it here and says, 'I sign this, Mrs. Kate Joyner,' and dated it. She had Mrs. Little to sign it and I signed it."

Mrs. Tucker said she first learned of the deed by reading "The Court House Records in the LaGrange Journal," and denied that any agreement to reconvey the land was ever made and said no request had been made for her to reconvey the land. Mrs. Little said that "they" wrote Mrs. Tucker about the deed; that there never was any agreement by anybody that Mrs. Tucker had to deed the land back; that they just considered the property hers; that she would get the mineral rights "after we passed away," and that the $45 recited in the deed was paid on doctor bills.

The fact that the grantors signed and acknowledged the deed and thereafter caused it to be recorded raised the presumption that they did so for the purpose of making the deed effective as a conveyance, and further proof of delivery would not be necessary. However, if the proof should show that the deed was recorded for a different purpose, or through accident, fraud or mistake, such presumption would be overcome. Ford v. Hackel, 124 Tex. 402, 77 S.W.2d 1043. In the case before us the trial court heard the evidence and resolved that there was delivery of the deed, there is evidence to support his finding and it is sustained. Also, there is not evidence sufficient to rebut the presumption of acceptance of the conveyance by the grantee but the evidence supports the presumption. Ford v. Hackel, supra.

There was evidence to support the finding of the trial court to the effect that there was a consideration for the deed. However, a delivery of the deed having been shown and found, it was, as between the parties, effective to pass title whether there was or was not a consideration. Burgess v. Hatton, Tex.Civ.App., 209 S.W.2d 999. Error ref.

We have considered all points briefed by appellants and finding error is not presented, the judgment of the trial court is affirmed.

Affirmed.